# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

IN THE MATTER OF ENTRUST ENERGY, INCORPORATED, *ET AL.*,
*Debtor*

ANNA PHILLIPS, AS TRUSTEE OF THE ENTRUST LIQUIDATING TRUST,
*Appellee/Cross-Appellant,*

v.

ELECTRIC RELIABILITY COUNCIL OF TEXAS, INCORPORATED,
*Appellant/Cross-Appellee.*

On Appeal from the United States Bankruptcy Court
Southern District of Texas, Houston Division
Adv. No. 22-3018

## APPELLANT/CROSS-APPELLEE'S BRIEF

| | |
|---|---|
| Wallace B. Jefferson | Jamil N. Alibhai |
| Nicholas Bacarisse | Kevin M. Lippman |
| wjefferson@adjtlaw.com | jalibhai@munsch.com |
| nbacarisse@adjtlaw.com | klippman@munsch.com |
| Alexander Dubose & Jefferson LLP | Munsch Hardt Kopf & Harr, P.C. |
| 515 Congress Avenue | 3800 Ross Tower |
| Ste. 2350 | 500 N. Akard Street |
| Austin, Texas 78701 | Dallas, Texas 75201 |
| Telephone: (512) 482-9300 | Telephone: (214) 855-7500 |

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

IN THE MATTER OF ENTRUST ENERGY, INCORPORATED, *ET AL.*,
*Debtor*

ANNA PHILLIPS, AS TRUSTEE OF THE ENTRUST LIQUIDATING TRUST,
*Appellee/Cross-Appellant,*

v.

ELECTRIC RELIABILITY COUNCIL OF TEXAS, INCORPORATED,
*Appellant/Cross-Appellee.*

On Appeal from the United States Bankruptcy Court
Southern District of Texas, Houston Division
Adv. No. 22-3018

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that Appellant/Cross-Appellee Electric Reliability Council of Texas, Inc. has no parent company, and no publicly held corporation owns 10% or more of its stock.

The undersigned counsel of record also certifies that the following listed persons and entities as described in the fourth sentence of Fifth

Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made so that the judges of this court may evaluate possible disqualification or recusal.

| | |
|---|---|
| **Appellant/Cross-Appellee** | Electric Reliability Council of Texas, Inc. |
| **Counsel** | Jamil N. Alibhai<br>jalibhai@munsch.com<br>Kevin M. Lippman<br>klippman@munsch.com<br>MUNSCH HARDT KOPF & HARR, P.C.<br>3800 Ross Tower<br>500 N. Akard Street<br>Dallas, Texas 75201-6659<br>Telephone: (214) 855-7500<br>Facsimile: (214) 855-7584<br><br>Wallace B. Jefferson<br>wjefferson@adjtlaw.com<br>Nicholas Bacarisse<br>nbacarisse@adjtlaw.com<br>ALEXANDER DUBOSE & JEFFERSON LLP<br>515 Congress Avenue, Suite 2350<br>Austin, Texas 78701-3562<br>Telephone: (512) 482-9300<br>Facsimile: (512) 482-9303 |

| **Appellee/Cross-Appellant** | Anna Phillips, as Liquidating Trustee of the Entrust Liquidating Trust |
|---|---|
| **Counsel** | Charles R. Gibbs<br>crgibbs@mwe.com<br>Debbie E. Green<br>dgreen@mwe.com<br>McDermott Will & Emery LLP<br>2501 North Harwood Street<br>Dallas, Texas 75201<br>Telephone: (214) 295-8000<br>Facsimile: (972) 232-3098<br><br>Darren Azman<br>Guyon Knight<br>McDermott Will & Emery LLP<br>One Vanderbilt Avenue<br>New York, New York 10017<br>Telephone: (212) 547-5615<br>Dazman@mwe.com<br>Gknight@mwe.com |
| **Interested Party** | Public Utility Commission of Texas |
| **Counsel** | Ken Paxton<br>Attorney General of Texas<br>Brent Webster<br>First Assistant Attorney General<br><br>Grant Dorfman<br>Deputy First Assistant Attorney General<br><br>Shawn E. Cowles<br>Deputy Attorney General for Civil Litigation |

Sean O'Neill
Assistant Attorney General
Deputy Chief, Bankruptcy & Collections
Division

Layla D. Milligan
layla.milligan@oag.texas.gov
Autumn Highsmith
autumn.highsmith@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
BANKRUPTCY & COLLECTIONS DIVISION
P. O. Box 12548 MC008
Austin, Texas 78711-2548
Telephone: (512) 463-2173
Facsimile: (512) 936-1409

*/s/ Jamil N. Alibhai*
Jamil N. Alibhai
Counsel for Appellant/Cross-Appellee
Electric Reliability Council of Texas, Inc.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant/Cross-Appellee Electric Reliability Council of Texas, Inc. submits that oral argument is not necessary. *Electric Reliability Council of Texas, Inc. v. Just Energy Texas, L.P.*, 57 F.4th 241 (5th Cir. 2023) holds that *Burford* abstention under these circumstances is required. *Just Energy* also holds that whether ERCOT charged a lawful filed rate under its Protocols during the Storm is an issue bound up with those that require abstention.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ........................................ i

STATEMENT REGARDING ORAL ARGUMENT ................................. v

TABLE OF CONTENTS .......................................................... vi

TABLE OF AUTHORITIES .................................................... ix

JURISDICTIONAL STATEMENT ........................................... xv

ISSUES PRESENTED ......................................................... xvi

INTRODUCTION................................................................. 1

STATEMENT OF THE CASE ................................................. 5

    I.   Texas has a comprehensive regulatory scheme for the competitive ERCOT wholesale power market. ................................... 5

    II.  The PUCT oversees the ERCOT wholesale power market and delegates regulatory authority to ERCOT. ................................... 5

    III. The Storm causes massive disruption to the ERCOT wholesale power market. ................................................................. 8

    IV. The PUCT orders ERCOT to set the market price to account for the severe scarcity conditions. ....................................... 10

    V.  Market participants challenge the PUCT Orders. ...................... 13

    VI. Entrust files for bankruptcy protection after purchasing energy at $9,000/MWh. ................................................... 15

    VII. The Trustee sues ERCOT for money damages............................ 16

SUMMARY OF THE ARGUMENT ........................................ 19

ARGUMENT ................................................................ 21

    I.   Standard of Review ................................................ 21

    II.  The bankruptcy court erred by refusing to abstain under *Burford*. ...................................................................... 22

        A.   Burford precludes the bankruptcy court from reviewing the energy price set by Texas's electric-regulatory apparatus... 23

            1.   The Trustee's claims raise significant issues of Texas law................................................................... 26

2. The Trustee's claims require the bankruptcy court to resolve unsettled issues of Texas law. ...........................27

3. Texas has a uniquely important interest in the ERCOT market's regulation. ......................................31

4. Texas's grid and energy market require unified management and coherent policy. ................................33

5. Texas has established centralized fora for judicial review. ............................................................34

III. The Trustee's Pricing Claims are barred by the filed rate doctrine. ..........................................................35

A. The $9,000/MWh price is a filed rate...................................37

B. The Pricing Claims undermine the PUCT's regulatory authority and seek a discriminatory rate............................39

C. No exception to the filed rate doctrine applies....................41

IV. The bankruptcy court abused its discretion in refusing to dismiss the adversary proceeding under Rule 12(b)(7). ...........................43

A. The PUCT is an indispensable party....................................43

1. The PUCT has an interest in this case that it cannot protect as a nonparty. ...................................44

2. ERCOT faces substantial risk if the PUCT is not a party. ...........................................................46

B. The PUCT cannot be joined. ...............................................47

V. ERCOT does not owe Entrust a legal duty. ................................49

VI. ERCOT is immune from the Trustee's tort claims....................51

A. ERCOT shares Texas's Eleventh Amendment immunity....51

1. Texas statutes and case law view ERCOT as an arm of the State. .......................................................51

2. The State of Texas funds ERCOT..................................52

3. The State directly controls ERCOT. .............................52

4. ERCOT is concerned with statewide problems. ............53

5. The State has ultimate control over ERCOT's property. .................................................................53

6. While ERCOT may sue and be sued in its own name, this fact bears minimally on its immunity. ...................54

B. ERCOT's immunity has not been waived............................54

CONCLUSION .................................................................55

CERTIFICATE OF SERVICE.................................................57

CERTIFICATE OF COMPLIANCE.........................................58

# TABLE OF AUTHORITIES

**Cases**                                                          **Page(s)**

*Abbott v. Mex. Am. Legis. Caucus,*
    647 S.W.3d 681 (Tex. 2022) ............................................................. 54

*Ark. La. Gas Co. v. Hall,*
    453 U.S. 571 (1981) ................................................................. 36, 37

*BP Chems., Inc. v. AEP Tex. Cent. Co.,*
    198 S.W.3d 449 (Tex. App.—Corpus Christi 2006, no pet.) ................ 7

*Brown v. De La Cruz,*
    156 S.W.3d 560 (Tex. 2004) ............................................................. 50

*Burford v. Sun Oil Co.,*
    319 U.S. 315 (1943) ............................................................... *passim*

*Colo. River Water Conservation Dist. v. United States,*
    424 U.S. 800 (1976) ......................................................................... 24

*CPS Energy v. ERCOT,*
    No. 22-0056 (Tex. Sept. 2, 2022) .................................................... 52

*Daniel v. Univ. of Tex. Sw. Med. Ctr.,*
    960 F.3d 253 (5th Cir. 2020) ............................................. 22, 51, 53

*Devillier v. Texas,*
    53 F.4th 904 (5th Cir. 2023) ........................................................... 29

*Elec. Reliability Council of Tex., Inc. v. Just Energy Tex., L.P.,*
    57 F.4th 241 (5th Cir. 2023) ..................................................... *passim*

*Elephant Ins. Co., LLC v. Kenyon,*
    644 S.W.3d 137 (Tex. 2022) ..................................................... 49, 50

*In re Enron Corp.,*
    328 B.R. 75 (S.D.N.Y. 2005) ..................................................... 36, 41

*Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel,*
    883 F.2d 890 (10th Cir. 1989) ......................................................... 48

*In re Entergy Corp.*,
142 S.W.3d 316 (Tex. 2004) (orig. proceeding) ..................................... 5

*Entex, A Division of Noram Energy Corp. v. Gonzalez*,
94 S.W.3d 1
(Tex. App.—Houston [14th Dist.] 2002, pet. denied) .................. 49, 51

*ERCOT v. Panda Power Generation Infrastructure Fund, LLC*,
No. 22-0196 (Tex. Sept. 2, 2022) .......................................................... 52

*Exelon Generation Co. v. PUCT*,
No. D-1-GN-21-001772, 2021 WL 1587964 (53rd Dist. Ct., Travis
County, Tex. Apr. 19, 2021) ................................................................. 14

*Ford v. Cimarron Ins. Co.*,
230 F.3d 828 (5th Cir. 2000) ................................................................ 49

*Hernandez v. Mesa*,
140 S. Ct. 735 (2020) ............................................................................ 29

*Keogh v. Chi. & Nw. Ry. Co.*,
260 U.S. 156 (1922) ............................................................................... 36

*United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Hous.*,
544 F. App'x 490 (5th Cir. 2013) ......................................................... 54

*Kroger Co. v. Elwood*,
197 S.W.3d 793 (Tex. 2006) ................................................................. 49

*Lee v. Anthony Lawrence Collection, L.L.C.*,
47 F.4th 262 (5th Cir. 2022) .................................................. 22, 45, 47

*Luminant Energy Co. LLC v. PUCT*,
--- S.W.3d ---, No. 03-21-00098-CV, 2023 WL 2546961 (Tex. App.—
Austin Mar. 17, 2023, pet. filed) ...................................... 14, 15, 16, 30

*Luminant Energy Co. LLC v. PUCT*,
No. 03-21-00098-CV (Tex. App.—Austin Mar. 2, 2021) ......... 14, 15, 30

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*,
453 U.S. 1 (1981) .................................................................................. 50

*Miss. Power & Light Co. v. Miss. ex rel. Moore*,
  487 U.S. 354 (1988) ............................................................... 37

*Hood ex rel. Miss. v. City of Memphis*,
  570 F.3d 625 (5th Cir. 2009) ...................................... 43, 48

*Moss v. Princip*,
  913 F.3d 508 (5th Cir. 2019) ............................................ 22

*New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*,
  491 U.S. 350 (1989) ............................................................... 24

*Perry v. S.N.*,
  973 S.W.2d 301 (Tex. 1998) .............................................. 51

*PUC v. Constellation Energy Commodities Grp., Inc.*,
  351 S.W.3d 588 (Tex. App.—Austin 2011, pet. denied) ...................... 7

*Pulitzer-Polster v. Pulitzer*,
  784 F.2d 1305 (5th Cir. 1986) .......................................... 46

*Quackenbush v. Allstate Ins. Co.*,
  517 U.S. 706 (1996) ............................................................... 26

*Rajet Aeroservicios S.A. de C.V. v. Cervantes*,
  801 F. App'x 239 (5th Cir. 2020) ..................................... 48

*Rothstein v. Balboa Ins. Co.*,
  794 F.3d 256 (2d Cir. 2015) .............................................. 37

*RWE Renewables Americas LLC v. D'Andrea*,
  No. D-1-GN-21-001839, 2021 WL 1623894 (201st Dist. Ct., Travis
  County, Tex. Apr. 21, 2021) .............................................. 14

*Schutten v. Shell Oil Co.*,
  421 F.2d 869 (5th Cir. 1970) ............................................ 48

*Sierra Club v. City of San Antonio*,
  112 F.3d 789 (5th Cir. 1997) ..................................... *passim*

*Stratta v. Roe*,
  961 F.3d 340 (5th Cir. 2020) ............................................ 22

*Sw. Bell Tel. Co. v. City of El Paso*,
   243 F.3d 936 (5th Cir. 2001) ............................................................ 51

*Tex. Com. Energy v. TXU Energy, Inc.*,
   413 F.3d 503, 507 (5th Cir. 2005). .......................................... *passim*

*Tex. Com. Energy v. TXU Energy, Inc.*,
   No. C-03-2469, 2004 WL 1777597 (S.D. Tex. June 24, 2004), *aff'd on*
   *other grounds*, 413 F.3d 503 (5th Cir. 2005) .............................. *passim*

*Tex. Dep't of Pub. Safety v. Salazar*,
   304 S.W.3d 896 (Tex. App.—Austin 2009, appeal dismissed) ........... 44

*Tooke v. City of Mexia*,
   197 S.W.3d 325 (Tex. 2006) ............................................................ 54

*Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*,
   662 F.3d 336 (5th Cir. 2011) ........................................................... 55

*Util. Choice, L.P. v. TXU Corp.*,
   No. H-05-573, 2005 WL 3307524 (S.D. Tex. Dec. 6, 2005) ..... 37, 38, 42

*Webb v. B.C. Rogers Poultry, Inc.*,
   174 F.3d 697 (5th Cir. 1999) ........................................................... 22

*Wegoland Ltd. v. NYNEX Corp.*,
   27 F.3d 17 (2d Cir. 1994) ................................................................ 42

*Whalen v. Carter*,
   954 F.2d 1087 (5th Cir. 1992) ......................................................... 44

*Wilson v. Valley Elec. Membership Corp.*,
   8 F.3d 311 (5th Cir. 1993) ......................................................... *passim*

*Winn v. Alamo Title Ins. Co.*,
   No. A-09-CA-214-SS, 2009 WL 7099484
   (W.D. Tex. May 13, 2009) ........................................................ 36, 41

## Statutes

11 U.S.C. § 106 ....................................................................... 21, 54, 55

28 U.S.C. § 1334 ............................................................... 17

TEX. BUS. & COM. CODE § 24.005 ..................................... 17

TEX. CIV. PRAC. & REM. CODE § 101.102 ........................... 54

TEX. GOV'T CODE § 325.002 .............................................. 51

TEX. GOV'T CODE § 2001.038 ................................ 13, 34, 44

TEX. GOV'T CODE § 2001.176 ...................................... 13, 34

TEX. UTIL. CODE § 11.007 ........................................... 13, 34

TEX. UTIL. CODE § 15.001 ........................................... 13, 34

TEX. UTIL. CODE § 31.001 ............................................. 5, 45

TEX. UTIL. CODE § 32.001 .................................................. 32

TEX. UTIL. CODE § 35.004 .................................................. 38

TEX. UTIL. CODE § 38.202 .................................................. 53

TEX. UTIL. CODE § 39.001 .......................................... 14, 34

TEX. UTIL. CODE § 39.101 .................................................. 38

TEX. UTIL. CODE § 39.151 ........................................... *passim*

TEX. UTIL. CODE § 39.917 .................................................. 53

TEX. UTIL. CODE § 39.1515 ................................................ 53

TEX. UTIL. CODE § 39.1516 ................................................ 53

**Other Authorities**

16 TEX. ADMIN. CODE § 25.1 .............................................. 38

16 TEX. ADMIN. CODE § 25.43 ............................................ 29

16 TEX. ADMIN. CODE § 25.361 .......................................... 50

16 TEX. ADMIN. CODE § 25.501 ................................................... 6, 38, 45

16 TEX. ADMIN. CODE §§ 25.505(g)(6)(E), 25.505(h) (2021), *amended by*
47 Tex. Reg. 2742 (May 11, 2022)................................................ 10, 12

16 TEX. ADMIN. CODE § 25.509 ................................................... 6, 8, 10

FED. R. CIV P. 12 ......................................................... 22, 43, 48

FED. R. CIV. P. 19 ................................................... 43, 44, 47, 48

## JURISDICTIONAL STATEMENT

This Court has jurisdiction of this appeal under the collateral order doctrine and 28 U.S.C. § 158(d)(2). The bankruptcy court entered its order on the motion to dismiss on September 20, 2022. ROA.475. Appellant/Cross-Appellee timely filed its notice of appeal on October 3, 2022. ROA.478. This Court granted Appellant/Cross-Appellee's petition for direct review.

# ISSUES PRESENTED

1. Did the bankruptcy court err by denying in part ERCOT's Motion to Dismiss Amended Complaint and For Abstention?

   a. Does *Burford* require the bankruptcy court to abstain from deciding the Trustee's claims that the price of energy during the Storm was inconsistent with PURA, ERCOT's Protocols, or the SFA; or that the PUCT's pricing orders are not applicable to amounts Entrust owes ERCOT for its Storm-related invoices?

   b. Does the filed rate doctrine preclude the Trustee's claims attacking the wholesale electricity rates set in response to the PUCT Orders?

   c. Does the Trustee's failure to join the PUCT as a necessary party require dismissal of the Trustee's claims that the price of energy during the Storm was inconsistent with PURA, ERCOT's Protocols, or the SFA; or that the PUCT's pricing orders are not applicable to amounts Entrust owes ERCOT pursuant to Storm-related invoices?

   d. Is the Trustee's negligence claim barred by the lack of a legally cognizable duty owed by ERCOT to market participants?

   e. Does ERCOT, which administers the Texas wholesale electricity market pursuant to legislative and PUCT grants of authority and oversight, have sovereign immunity from tort claims in the exercise of that function, and is that immunity waived in bankruptcy court?

# INTRODUCTION

In February 2021, a fierce winter storm swept into Texas, plunging temperatures into the single digits and straining the electrical grid as substantial generation capacity went offline. The Public Utility Commission of Texas ("PUCT") and Electric Reliability Council of Texas, Inc. ("ERCOT") took emergency actions to ensure that prices in Texas's regulated electricity market reflected the extreme scarcity that suddenly plagued the system. Those actions raised the price of electricity to a PUCT-set maximum amount, incentivizing generators to sell power into the market and motivating large industrial consumers to minimize their use.

After the crisis abated, market participants challenged the PUCT's and ERCOT's measures in administrative proceedings and judicial-review actions in state court, arguing that the PUCT violated the Public Utility Regulatory Act ("PURA") and the Texas Administrative Procedure Act ("APA"). This appeal involves the attempt by a market participant to avoid paying the PUCT-set rate by collaterally attacking the PUCT's and ERCOT's actions in bankruptcy court. This Court's precedent requires abstention or dismissal for five reasons.

First, in a related appeal decided this year involving another market participant that sued ERCOT, this Court held *Burford* abstention is required. *Elec. Reliability Council of Tex., Inc. v. Just Energy Tex., L.P.*, 57 F.4th 241, 245 (5th Cir. 2023). Identical to *Just Energy*, this proceeding would require a federal court to decide whether the PUCT's orders setting the price ("PUCT Orders") are valid, whether ERCOT had a basis to apply the $9,000/MWh price how and when it did, and whether ERCOT misapplied its lawful authority. It would require a federal court to delve into the area of utility regulation, one of the most important functions traditionally reserved for, and uniquely important to, the State of Texas. Like in *Just Energy*, entertaining these inquiries and wading into utility regulation would necessarily affect all market participants because Entrust's debt must be allocated across all market participants. And the same special state forum that existed in *Just Energy* for deciding these issues—the Travis County district court—exists here.

Second, the filed rate doctrine bars these federal-court claims challenging rates approved—and required—by the PUCT. All rate challenges must proceed before the agency and in the designated judicial-review proceedings to ensure consistency for all market participants. In

Counts I, II, III, IV, and VI (the "Pricing Claims"), the Trustee attempts to bypass that process by asking the bankruptcy court to declare these approved rates unlawful, unjust, or excessive. In doing so, the Trustee impermissibly seeks to modify a filed rate and achieve a discriminatory rate that benefits only her.

Third, the suit against ERCOT cannot proceed because the PUCT must be present to defend challenges to its own regulatory actions. The PUCT, however, is unquestionably immune from this federal suit, meaning the case must be dismissed. Once again, challenges to PUCT actions must proceed, if at all, in state court, where immunity is narrowly waived under state law.

Fourth, the Trustee's gross negligence claim fails because ERCOT owes no legal duty to Entrust. The Trustee attempts to rely on statutory directives to ERCOT that cannot translate to a tort duty as a matter of law or manufacture a tort duty Texas law has *never* imposed on ERCOT. Neither tack succeeds, and the Trustee's gross negligence claim fails.

Finally, the Trustee's gross negligence claim fails for the independent reason that ERCOT is immune from this claim. ERCOT shares the State of Texas's sovereign immunity in the exercise of its

function in overseeing the Texas electricity grid. ERCOT has not waived this immunity by filing a proof of claim against Entrust because the proof of claim relates to unpaid invoices while the Trustee's tort claim is premised on ERCOT's purported failure to manage the grid properly.

This Court should therefore reverse the bankruptcy court and order abstention or dismissal.

# STATEMENT OF THE CASE

## I. Texas has a comprehensive regulatory scheme for the competitive ERCOT wholesale power market.

Texas has an intrastate electric grid that is independent of the two larger national grids. ERCOT oversees the grid and Texas's wholesale electric market, which are subject to Texas's regulatory authority.

Texas "establish[ed] a comprehensive and adequate regulatory system for electric utilities" through PURA. TEX. UTIL. CODE § 31.001(a); *Just Energy*, 57 F.4th at 245. PURA is "the exclusive means of regulating electric utilities in Texas." *In re Entergy Corp.*, 142 S.W.3d 316, 323 (Tex. 2004) (orig. proceeding). Texas's statutory scheme establishes a competitive market for many components of the electric power industry, while recognizing that "the public interest requires that rules, policies, and principles be formulated and applied to protect the public interest in a more competitive marketplace." TEX. UTIL. CODE § 31.001(c).

## II. The PUCT oversees the ERCOT wholesale power market and delegates regulatory authority to ERCOT.

The PUCT is required by statute to certify an "independent organization" to manage the market and ensure the grid's adequacy and reliability. *Id.* §§ 39.151(a), (c). The PUCT certified ERCOT to fill this role and exercises plenary authority over ERCOT to ensure it operates

consistent with the market design established by the Legislature and PUCT rules. *Id.* § 39.151(d). ERCOT is thus "directly responsible and accountable to the commission," which has a duty—and "complete authority"—"to oversee and investigate" ERCOT's "finances, budget, and operations as necessary to ensure [ERCOT's] accountability and to ensure that [ERCOT] adequately performs [its] functions and duties." *Id.*

The PUCT must "adopt and enforce rules relating to the reliability of the regional electrical network and accounting for the production and delivery of electricity among generators and all other market participants." *Id.*; *see, e.g.*, 16 TEX. ADMIN. CODE § 25.509. These rules direct that the "protocols and other rules and requirements" adopted by ERCOT to "implement" the PUCT's market design "shall promote economic efficiency in the production and consumption of electricity; support wholesale and retail competition; support the reliability of electric service; and reflect the physical realities of the ERCOT electric system." 16 TEX. ADMIN. CODE § 25.501(a).

ERCOT thus determines market-clearing prices unless "otherwise directed by" the PUCT, its state regulator. *Id.*; *Just Energy*, 57 F.4th at 246. In this role, ERCOT acts as a revenue-neutral market clearinghouse;

it is "the central counterparty for all transactions settled by ERCOT" and "the sole buyer to each seller, and the sole seller to each buyer, of all energy." ERCOT Protocols § 1.2(4).[1]

The PUCT also delegates to ERCOT authority to adopt Protocols regulating the market and grid. TEX. UTIL. CODE § 39.151(d). Spanning ten thousand pages, these ERCOT Protocols govern market participants and "provide the framework for the administration of the Texas electricity market." *BP Chems., Inc. v. AEP Tex. Cent. Co.*, 198 S.W.3d 449, 452 (Tex. App.—Corpus Christi 2006, no pet.). The Protocols "have the force and effect of statutes," *PUC v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 595 (Tex. App.—Austin 2011, pet. denied), and market participants are statutorily required to obey them on pain of PUCT-imposed administrative penalties, TEX. UTIL. CODE § 39.151(j). These Protocols also incorporate the Standard Form Market Participant Agreement ("SFA"), which is the required and regulatorily approved contract that governs the relationship between ERCOT and all market participants. *See* ERCOT Protocols § 22.

---

[1] The ERCOT Protocols in effect in February 2021 are available at https://www.ercot.com/files/docs/2021/08/18/February_1__2021_Nodal_Protocols.pdf.

Although it has delegated substantial authority to ERCOT to operate the wholesale power market and grid, the PUCT maintains strict oversight. The PUCT's market pricing rules preserve its authority to take "actions necessary to protect the public interest, including actions that are otherwise inconsistent" with existing rules. 16 Tex. Admin. Code § 25.509(c). The PUCT has the power to decertify or penalize ERCOT if it concludes that ERCOT has not adequately performed its functions or duties. Tex. Util. Code § 39.151(d).

## III. The Storm causes massive disruption to the ERCOT wholesale power market.

On February 14, 2021, Winter Storm Uri (the "Storm") bore down on Texas with sustained sub-freezing temperatures, prompting the PUCT and ERCOT to take immediate emergency actions to prevent the collapse of the entire Texas power grid. ROA.289-90. During the Storm, temperatures remained below freezing for over 100 consecutive hours in parts of the state and dipped as low as -2ºF in Dallas/Fort Worth. *See* Review of February 2021 Extreme Cold Weather Event—ERCOT Presentation at 18 (Feb. 25, 2021).[2] At the Storm's worst, nearly half of

---

[2] https://www.ercot.com/files/docs/2021/03/03/Texas_Legislature_Hearings_2-25-2021.pdf.

all electric generation capability in the ERCOT region was unavailable. ROA.289-90. At the same time, electricity demand dramatically increased. ROA.289. To prevent physical damage to the electric grid, the supply and demand of electricity must at all times be balanced, and a frequency of 60 hertz maintained.

If ERCOT did not maintain a stable frequency by balancing the amount of generation supplied with the amount of power demanded ("load"), the grid would have failed catastrophically, and it would have taken weeks or months to restore power statewide. *See* Review of February 2021 Extreme Cold Weather Event—ERCOT Presentation at 12 (Feb. 25, 2021). As generation resources became unavailable during the Storm, ERCOT declared increasingly severe emergency conditions, eventually reaching its highest state of emergency, Energy Emergency Alert Level 3 ("EEA3"). ROA.289. ERCOT ordered transmission utilities to "shed firm Load"—that is, to initiate mandatory rolling power outages to maintain system frequency. ROA.286. Although ERCOT narrowly avoided a complete collapse of the entire ERCOT grid that night, severe cold and emergency conditions continued for days.

## IV. The PUCT orders ERCOT to set the market price to account for the severe scarcity conditions.

ERCOT operates an "energy-only market," where the economic incentive to supply electricity and maintain reserve generation capacity comes from prices paid for wholesale power, particularly during times of scarcity; generators receive no direct payments in a separate "capacity market," as is common in other regions. *See* 31 Tex. Reg. 7317, 7318-19 (2006). Accordingly, the PUCT requires ERCOT to use a "scarcity pricing mechanism" to ensure that wholesale power prices reflect scarcity conditions. 16 TEX. ADMIN. CODE § 25.509(b). The PUCT has explained that "[t]he possibility of high prices in the ERCOT-real-time market provides generation with strong incentives to be available on short notice ... [and] load with strong incentives to voluntarily curtail on short notice to save money." 31 Tex. Reg. 7317, 7335. Nevertheless, for times of extreme scarcity, PUCT rules impose a "system-wide offer cap," which during the Storm was $9,000/MWh. *See* 16 TEX. ADMIN. CODE §§ 25.505(g)(6)(E), 25.505(h) (2021), *amended by* 47 Tex. Reg. 2742 (May 11, 2022).

The PUCT's rules require ERCOT to implement the scarcity pricing mechanism, while reserving to the PUCT the power to intervene when

necessary to protect the public interest. *Id.* §§ 25.509(b)-(c) ("Nothing in this section prevents the commission from taking actions necessary to protect the public interest, including actions that are otherwise inconsistent with other provisions in this section."). The PUCT exercised this authority on February 15, after ERCOT informed it that energy prices were fluctuating dramatically and clearing far below $9,000/MWh, despite the most severe scarcity the market had ever seen. ROA.186-88. Specifically, ERCOT's system was not accounting for the demand from customers experiencing load shed, and as a result, it reflected reserves, i.e., power supply in excess of demand, that artificially suppressed prices.[3] ERCOT's system thus did not reflect a consistent price of $9,000/MWh, depriving the market of signals that would have incentivized generators to supply more electricity and industrial users to curtail their consumption and remain offline.[4]

---

[3] *See* Testimony of Former PUCT Chair Deann Walker to Texas Senate Committee on Business and Commerce at 6:50:02-6:52:41 (Feb. 25, 2021) ("Walker Testimony"), https://bit.ly/3tk1REp; *see also* Testimony of Former ERCOT CEO Bill Magness to Texas Senate Committee on Jurisprudence at 2:52:17-53:11, 2:57:30-58:59 ("Magness Testimony") (Mar. 11, 2021), https://bit.ly/3tk2Cxf.

[4] Walker Testimony at 6:52:11-41; Magness Testimony at 3:40:50-41:22.

In response, the PUCT ordered ERCOT to address "significant market anomalies identified during this EEA3 event." ROA.181. The PUCT's Order explained that prices less than $9,000/MWh when excessive demand and limited supply are forcing load offline are "inconsistent with the fundamental design of the ERCOT market" because "[e]nergy prices should reflect scarcity of the supply." *Id.* The PUCT concluded: "If customer load is being shed, scarcity is at its maximum, and the market price for the energy needed to serve that load should also be at [their] highest." *Id.* Accordingly, the PUCT ordered ERCOT to "ensure that firm load that is being shed in EEA3 is accounted for in ERCOT's scarcity pricing signals." ROA.182. ERCOT then "implement[ed] the pricing outcomes directed by the order by making an administrative adjustment" to its systems, which would have the effect of holding prices at $9,000/MWh.[5]

---

[5] ERCOT Market Notice M-C0121521-01 (Feb. 15, 2021), https://www.ercot.com/services/comm/mkt_notices/detail?id=bbd04677-bc71-3a8f-9d99-5715e3484f5e. On February 16, the PUCT issued a second order (collectively with the Feb. 15 order, "the PUCT Orders") nearly identical to the first, removing only a provision that would have retroactively applied scarcity pricing to transactions executed during the 16-hour period between initiation of load shed and issuance of the first order. ROA.186-88.

The resulting price of energy adjusted incentives not only for energy producers but also for consumers. It encouraged industrial consumers to reduce their electricity use, freeing that supply for residential customers.[6] ERCOT held the emergency pricing until EEA3 conditions ended at approximately 9:00 a.m. on February 19. ROA.294.[7]

## V.  Market participants challenge the PUCT Orders.

The PUCT exercises administrative jurisdiction over challenges to ERCOT's compliance with PURA, the PUCT's own actions, the ERCOT Protocols, and the SFA. TEX. UTIL. CODE §§ 15.001, 39.151(d), (d-4)(5). Challenges to PUCT regulatory actions must be brought in state district court in Travis County. *See* TEX. GOV'T CODE §§ 2001.038(b), 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001. Challenges to

---

[6] Testimony of Former PUCT Commissioner Arthur D'Andrea to Texas House State Affairs Committee at 1:16:06-53 (Mar. 11, 2021) (industrial customers would "sell the power [they] bought … back to the grid at these high prices, and you can use it for residentials to get their lights back on"), https://tlchouse.granicus.com/MediaPlayer.php?%20view_id=46&clip_id=19601.

[7] ERCOT Market Notice M-C021521-04 (Feb. 18, 2021), https://www.ercot.com/services/comm/mkt_notices/detail?id=464272ec-0e2f-3d9d-be6c-87f012f0df73; ERCOT Market Notice M-C021521-05 (Feb. 19, 2021), https://www.ercot.com/services/comm/mkt_notices/detail?id=dba778b5-e00b-30c6-ba2e-16784af65c2d.

PUCT actions that are considered "competition rules" must be presented to the Third Court of Appeals in Austin (which also hears appeals from Travis County district courts). TEX. UTIL. CODE § 39.001(e).

Several market participants filed lawsuits in Travis County district court and the Third Court of Appeals challenging the PUCT Orders and seeking retroactive repricing. *See, e.g.*, *Luminant Energy Co. LLC v. PUCT*, No. 03-21-00098-CV (Tex. App.—Austin Mar. 2, 2021); *Exelon Generation Co. v. PUCT*, No. D-1-GN-21-001772, 2021 WL 1587964 (53rd Dist. Ct., Travis County, Tex. Apr. 19, 2021); *RWE Renewables Americas LLC v. D'Andrea*, No. D-1-GN-21-001839, 2021 WL 1623894 (201st Dist. Ct., Travis County, Tex. Apr. 21, 2021). These state court lawsuits contest the validity of the PUCT Orders and ERCOT's implementation of them, arguing that these regulatory actions exceeded the PUCT's statutory authority under PURA and failed to comply with the APA.

On March 17, 2023, the Third Court of Appeals issued its opinion in *Luminant*, holding, among other things, that the PUCT exceeded its authority under PURA in issuing the PUCT Orders. *Luminant Energy Co. LLC v. PUCT*, --- S.W.3d ---, No. 03-21-00098-CV, 2023 WL 2546961, at *1 (Tex. App.—Austin Mar. 17, 2023, pet. filed).

The *Luminant* Court found it had jurisdiction over the direct appeal despite the PUCT's arguments that the Orders were not competition rules—or rules at all—subject to direct review in the Court of Appeals. *Id.* at \*14-15. Though the court did not reach the issue of whether the PUCT Orders failed to comply with the APA's regular or emergency rulemaking procedures, it found the Orders *did* exceed the PUCT's statutory authority under PURA. *Id.* at \*16. Thus, the court reversed the Orders and remanded the case to the PUCT for further proceedings. *Id.* at \*18. On March 23, 2023, the PUCT filed its petition for review in the Supreme Court of Texas.[8]

## VI. Entrust files for bankruptcy protection after purchasing energy at $9,000/MWh.

Entrust Energy Inc. and its affiliated debtors ("Entrust") were natural gas and electricity retailers that sold and delivered electricity across the United States. ROA.287. During the Storm, Entrust bought energy from ERCOT and received invoices for those purchases (the

---

[8] Petition for Review, filed March 23, 2023 https://search.txcourts.gov/SearchMedia.aspx?MediaVersionID=9642d3 3e-4bc3-4b78-b05e- 674b1805ecc1&coa=cossup&DT=BRIEFS&MediaID=13217df6-727a- 4ca6-98b2-7895262016c8

"ERCOT Invoices"). However, Entrust failed to pay the ERCOT Invoices and owes ERCOT approximately $298 million. *See* ROA.299. Shortly thereafter, ERCOT informed Entrust that it was in material breach of the SFA, and as a result, ERCOT would transition Entrust's remaining customers to a provider of last resort ("POLR"). ROA.297-98. ERCOT did so, and the parties refer to this event as the "Mass Transition." *Id*.

On March 30, 2021, Entrust filed a voluntary petition for relief under chapter 11. ROA.299. Later that year, on December 30, 2021, the Court entered its order confirming Entrust's plan of liquidation as to nine of the debtors. Bankr.Dkt.480.

## VII. The Trustee sues ERCOT for money damages.

On February 4, 2022, Anna Phillips, as Trustee of the Entrust Liquidating Trust ("Trustee"), filed an adversary proceeding in the bankruptcy court asserting twelve causes of action against ERCOT. ROA.5. The Trustee sought to adjust the ERCOT Invoices on the theory that the PUCT Orders and ERCOT's subsequent actions raising the wholesale electricity price to $9,000/MWh violated Texas law. *See generally* ROA.19-32. ERCOT moved to dismiss the entire complaint on the grounds that the filed rate doctrine bars the Trustee's claims and that

the claims should be dismissed for failure to join the indispensable PUCT. ROA.151-60. Alternatively, ERCOT asked that the bankruptcy court abstain either under 28 U.S.C. § 1334(c)(1) or *Burford*. ROA.146-50. The bankruptcy court dismissed certain counts against ERCOT and allowed the Trustee to replead others. ROA.561-62.

The Trustee filed her First Amended Complaint ("Complaint") on June 24, 2022. ROA.281. The Complaint again sought repricing of the ERCOT Invoices because the PUCT Orders violated state law, and because the price ERCOT charged pursuant to the PUCT Orders was illegal, excessive, and inconsistent with ERCOT's Protocols and the SFA. ROA.300-09. The Trustee alleged the following causes of action:

- Objection to ERCOT's claim under § 502(b)(1) on the ground that it is excessive and in conflict with the SFA;

- Objection to ERCOT's claim under § 502(b)(1) on the ground that ERCOT failed to mitigate its damages;

- Objection to ERCOT's claim under § 502(b)(1) to avoid constructively fraudulent obligations under § 548;

- Objection to ERCOT's claim under § 502(b)(1) to avoid constructively fraudulent obligations under TEX. BUS. & COM. CODE § 24.005;

- Violation of Takings Clause under the Fifth Amendment; and

- Gross Negligence.

ROA.300-08.

ERCOT again sought dismissal, raising the same case-dispositive arguments as it did in response to the Trustee's original complaint. ROA.340-84. Additionally, ERCOT sought dismissal of the Trustee's gross negligence claim on the grounds it is immune from suit and that it owes no tort duty to market participants. ROA.377-82. The bankruptcy court dismissed the Trustee's takings claim but otherwise denied the motion. ROA.475-76. The bankruptcy court found ERCOT was not immune from suit, that the Complaint did not implicate the filed rate doctrine, and that no abstention principles warranted abstention. *See* ROA.643.[9]

ERCOT appealed these rulings, and the Trustee appealed the dismissal of her takings claim. ROA.478, 485. With the parties' agreement, the bankruptcy court certified the issues presented by this appeal for direct review in this Court and stayed proceedings pending resolution of the appeal. Adv.Dkt.77. This Court granted the parties'

---

[9] The bankruptcy court's decision not to abstain was made prior to *Just Energy*.

petitions for direct review. Order Granting Permission to Appeal (5th Cir. Nov. 18, 2022).

## SUMMARY OF THE ARGUMENT

This Court has already found that abstention is warranted under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943) in an almost identical appeal decided earlier this year—*Just Energy*. In light of *Just Energy*, the bankruptcy court erred in failing to abstain under *Burford*. Each of the Trustee's Pricing Claims depends on allegations that the Storm-related energy prices violated Texas law. The claims thus implicate Texas's pervasive regulatory scheme governing those rates and the broader grid and market. And as in *Burford* and *Just Energy*, the Trustee's claims cannot be adjudicated without affecting the market as a whole. For this reason, Texas established a centralized system of administrative and judicial review that is already considering these same questions. The Trustee's effort to evade this mechanism threatens to disrupt the regulatory scheme and Texas's efforts to stabilize the market following a historic disruption. That is precisely what *Burford* prohibits and what this Court recognized in *Just Energy*. As such, abstention is required.

Additionally, the Trustee's Complaint violates the filed rate doctrine and should be dismissed. The doctrine prohibits claims alleging that a regulated entity's "'filed rate' is too high, unfair or unlawful," and this Court has held that it applies to prices in the ERCOT wholesale energy market. *Tex. Com. Energy v. TXU Energy, Inc. ("TCE")*, 413 F.3d 503, 507 (5th Cir. 2005). Here, the Trustee's claims challenge the rate charged during the Storm as illegal and excessive—a violation of the filed rate doctrine.

Next, the PUCT's absence requires dismissal. Underlying a majority of the Trustee's claims is an APA-based challenge to the PUCT Orders, to which the PUCT is a jurisdictionally required party under Texas law. Because the PUCT's immunity precludes its joinder, the Trustee's claims must be dismissed.

ERCOT cannot be liable under any tort theory because the Trustee has failed to allege a cognizable legal duty. Rather, the Trustee attempts to establish tort liability through ERCOT's general legislative function to ensure a reliable grid—but this does not translate to a tort duty owed by ERCOT to Entrust.

Finally, even if the Trustee could articulate a legally cognizable duty, ERCOT's Eleventh Amendment immunity requires dismissal of the gross negligence claim. ERCOT is an arm of the state under this Court's six-part test: ERCOT regulates Texas's intrastate grid and power market using delegated state regulatory authority; ERCOT's leadership is selected by the State, which also exercises "complete authority" over ERCOT; ERCOT is funded by a statutory fee set by the PUCT, and the State exercises plenary authority over ERCOT's budget and property; and the State treats ERCOT as governmental in numerous ways, including by considering ERCOT a "state agency" for certain purposes. ERCOT's immunity has not been waived under 11 U.S.C. § 106(b) because the Trustee's gross negligence claim does not arise out of the same transaction or occurrence as ERCOT's proof of claim. ERCOT is therefore immune.

## ARGUMENT

### I.    Standard of Review

A court's ruling regarding dismissal under the filed rate doctrine is reviewed *de novo*. *TCE*, 413 F.3d at 507. This Court reviews questions of subject matter jurisdiction, including sovereign immunity

determinations, *de novo*. *Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 255 (5th Cir. 2020). A court's ruling regarding dismissal under Rule 12(b)(7) is reviewed for abuse of discretion. *Moss v. Princip*, 913 F.3d 508, 514-15 (5th Cir. 2019); *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262, 265 (5th Cir. 2022). This Court "review[s] an abstention ruling for abuse of discretion, but '[it] review[s] de novo whether the requirements of a particular abstention doctrine are satisfied.'" *Just Energy*, 57 F.4th at 247 (quoting *Stratta v. Roe*, 961 F.3d 340, 356 (5th Cir. 2020)). "Because the exercise of discretion must fit within the specific limits prescribed by the particular abstention doctrine invoked, a court necessarily abuses its discretion when it abstains out-side of the doctrine's strictures." *Id.* (quoting *Webb v. B.C. Rogers Poultry, Inc.,* 174 F.3d 697, 701 (5th Cir. 1999) (alteration and internal quotation marks omitted)).

## II. The bankruptcy court erred by refusing to abstain under *Burford*.

Earlier this year, this Court found *Burford* abstention appropriate under nearly identical circumstances. In *Just Energy*, a retail energy provider sought to avoid invoice obligations incurred during the Storm by alleging that ERCOT failed to comply with the Protocols in charging

$9,000/MWh for electricity during the Storm. *Just Energy*, 57 F.4th at 245. This Court held the bankruptcy court must abstain under *Burford*. *Id.*

This Court premised its decision on two important considerations: (1) a regulatory regime where the "state-agency PUCT [is] in charge of virtually all pertinent considerations regarding the electricity market in Texas," makes Texas's interest in decisions affecting that market "paramount," *id.* at 252; and (2) that the plaintiff asked the Court to second-guess both the PUCT Orders *and* ERCOT's application of those Orders and its own Protocols entangled the case in unsettled state law. *Id.* at 250. These considerations apply to this adversary proceeding against ERCOT in the same bankruptcy court.

## A. *Burford* precludes the bankruptcy court from reviewing the energy price set by Texas's electric-regulatory apparatus.

The *Burford* abstention doctrine preserves federalism values and prevents federal courts from improperly interfering in state regulatory decisions. *Burford*, 319 U.S. at 334. Abstention is required when "difficult questions of state law [exist] bearing on policy problems of substantial public import whose importance transcends the result in the case then at

bar" or the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans ("NOPSI")*, 491 U.S. 350, 361 (1989) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976)).

In *Burford*, the federal suit "attacked the validity of an order of the Texas Railroad Commission granting the petitioner Burford a permit to drill" oil wells. 319 U.S. at 316-17. Because oil and gas "must be regulated as a unit for conservation purposes," the Commission's orders in one case "necessarily affect[ed] the entire state conservation system." *Id.* at 319, 324. To ensure uniformity, Texas "concentrat[ed] all direct review of the Commission's orders in the state district courts of Travis County." *Id.* at 326. The Court ordered abstention because the case "so clearly involve[d] basic problems of Texas policy," and "[d]elay, misunderstanding of local law, and needless federal conflict with the state policy" would be "the inevitable product of" concurrent federal review. *Id.* at 327, 332.

Likewise, *Wilson* concerned the state-law retroactivity of a decision giving the Louisiana Public Service Commission the power to regulate

the rates of rural electric cooperatives. *Wilson v. Valley Elec. Membership Corp.*, 8 F.3d 311, 312-13 (5th Cir. 1993). Abstention was proper because of Louisiana's supervening state interest in electric regulation, especially given Louisiana's "centralized system of review" in state court. *Id.* at 315-16; *accord Sierra Club v. City of San Antonio*, 112 F.3d 789, 794 (5th Cir. 1997) (finding *Burford* abstention appropriate where "a comprehensive regulatory scheme" administered by a state agency governed an "entirely intrastate" aquifer at the center of the dispute).

Earlier this year, this Court ordered the bankruptcy court to abstain under *Burford* from hearing a nearly identical dispute regarding the price of energy during the Storm. *Just Energy*, 57 F.4th at 250. The result should be the same here.[10]

---

[10] Relying on *Just Energy*, the bankruptcy court has since abstained under *Burford* in yet another similar adversary proceeding brought by a market participant seeking to avoid amounts owed for energy purchased during the Storm. *See Russell F. Nelms in his capacity as Plan Administrator of the estate of Griddy Energy LLC v. Elec. Reliability Council of Tex., Inc.*, Adv. No. 22-03315 (Bankr. S.D. Tex. Mar. 6, 2023), Dkt. No. 36.

### 1. The Trustee's claims raise significant issues of Texas law.

The first *Burford* factor considers "whether the plaintiff's claim may be 'in any way entangled in a skein of state law that must be untangled before the federal case can proceed.'" *Sierra Club*, 112 F.3d at 795 (quoting *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 727 (1996)). Even if a cause of action does not facially arise under state law, abstention may be appropriate if the underlying issues presented are state law issues. *See id.*

Unlike in *Just Energy*, which involved Canadian-law claims*, this factor weighs in favor of abstention. *Just Energy*, 57 F.4th at 251. Whether claims are framed under federal or state law is not dispositive when evaluating the first *Burford* factor. *Burford*, 319 U.S. at 317 (abstention was warranted when plaintiff claimed a violation of its federal constitutional rights); *Sierra Club*, 112 F.3d at 795 (abstention was warranted when plaintiff claimed a federal statutory violation). The Trustee's claims arise under state law because each incorporates and depends upon detailed allegations that ERCOT's wholesale electricity prices during the Storm, as well as the PUCT Orders on which the price was based, violated Texas statutes, ERCOT's Protocols, and the SFA.

ROA.292-93. The Trustee's claims are unquestionably "entangled in a skein of state law." *Sierra Club*, 112 F.3d at 795.

### 2. The Trustee's claims require the bankruptcy court to resolve unsettled issues of Texas law.

The Trustee's claims "require[] inquiry into unsettled issues of state law." *Wilson*, 8 F.3d at 314. *Just Energy* clarified that this factor depends on "whether the court will be forced to weigh competing local interests and mostly review an agency's decision in an area in which that agency is arguably an expert." *Just Energy*, 57 F.3d at 250. It further held the plaintiff's claims required such an inquiry and that "by proceeding the district court would have risked reaching a different answer than the state institutions with greater interest in and familiarity with such matters." *Id.* (quoting *Sierra Club*, 112 F. 3d at 796).

Each of the Trustee's Counts implicates unsettled state law issues. Count I is an objection to ERCOT's proof of claim under § 502(b)(1) seeking "to reduce the ERCOT Claim because … the ERCOT Claim as filed is unenforceable against the Debtors and property of the Debtors *under the SFA and Protocols*." ROA.300 (emphasis added). Likewise, Count II objects to ERCOT's claim on the ground ERCOT failed to mitigate its damages. ROA.302-03. The Trustee premises these claims on

allegations that ERCOT was not permitted under the Protocols to account for load shed in its scarcity pricing signals but unlawfully did so without complying with Protocol change procedures. ROA.301, 303.

Similarly, Counts III and IV are fraudulent-transfer claims asserting ERCOT's proof of claim is based on a miscalculation of amounts owed under the Protocols, as ERCOT "unlawfully changed the Reliability Deployment Price Adder to include firm load shed and continued to do so even after firm load shed ended on February 17, 2021." ROA.304; *see also* ROA.305 (asserting state-law fraudulent transfer claim on the ground that obligation is for "power sold at the unreasonable and excessive $9,000/MWh price"). *Just Energy* requires abstention from claims asserting that "ERCOT misapplied its lawful authority" or asking the court to "determine whether it was appropriate for ERCOT to disregard the Protocols." 57 F.4th at 250 (alterations incorporated). Counts I through IV require abstention for the same two reasons.

Though Count V—the Trustee's constitutional taking claim—has been dismissed, the Trustee appeals this dismissal, and the claim similarly implicates important state-law questions. Count V seeks damages for ERCOT's purportedly wrongful Mass Transition. ROA.306-

07. ERCOT sought dismissal of Count V on the ground, among others, that ERCOT cannot be liable to a retail energy provider for transitioning, or attempting to transition, the retail energy provider's customers to a POLR under PUCT rules. ROA.375 (citing 16 TEX. ADMIN. CODE § 25.43(o)(2)). Limitations on ERCOT's liability to market participants promulgated by the PUCT are part of the regulatory scheme over which the "PUCT [is] in charge of virtually all pertinent considerations." *Just Energy*, 57 F.4th at 252. Moreover, whether ERCOT can be held liable for a taking *at all* is unsettled insofar as whether ERCOT is an organ of the Texas government is currently under review in the Supreme Court of Texas. *See Devillier v. Texas*, 53 F.4th 904, 904 (5th Cir. 2023) ("[T]he Fifth Amendment Takings Clause as applied to the states through the Fourteenth Amendment does not provide a right of action for takings claims against a state." (citing, *inter alia*, *Hernandez v. Mesa*, 140 S. Ct. 735, 742 (2020))); *see also Just Energy*, 57 F.4th at 255 n.5.

Finally, Count VI, gross negligence, implicates unsettled questions of state law, including whether ERCOT owes common-law tort duties that have never been recognized to market participants and whether it

is immune from tort claims arising out of the Storm. *Just Energy*, 57 F.4th at 251 n.8.

*Luminant* does not settle these unsettled state law issues. Whether the PUCT Orders and ERCOT's actions under them violate the SFA and Protocols was neither addressed nor on appeal in *Luminant*. *See generally, Luminant Energy Co. LLC*, 2023 WL 2546961. Moreover, *Luminant* did not address one of the Trustee's attacks on the Orders here—whether they violate the APA. Finally, *Luminant* is far from decided, as the PUCT has sought review in the Supreme Court of Texas. Even if the Supreme Court declines review, the PUCT must still conduct further proceedings to determine how to effectuate the *Luminant* mandate with respect to the market.

In sum, none of the SFA and Protocol provisions on which the Trustee's state-law attacks rely have ever been judicially construed. Yet those provisions govern the relationship between ERCOT and every market participant. The bankruptcy court's determination of the Trustee's state-law claims implicating ERCOT's conduct under the Protocols could have far-reaching effects. A ruling that ERCOT erred under the Protocols by implementing the PUCT Orders—which

themselves have never been judicially construed—would destabilize the market by inviting further federal-court litigation of these issues.

As discussed in *Just Energy*, to allow the bankruptcy court to otherwise "determine whether it was appropriate for ERCOT to disregard the Protocols, [it] necessarily, would have to second guess ERCOT's decision making and authority during the unusual, emergency circumstances" of the Storm—"[t]hat, in turn, risks reaching a different answer than the state institutions with greater interest in and familiarity with such matters." 57 F.4th at 250. "This is precisely the sort of highly localized, specialized, judgmental, and perhaps partisan analysis that begs abstention." *Id.* at 250-51 (citation and quotation omitted). The Complaint raises exactly the kind of important, unsettled questions of state law that command *Burford* abstention.

### 3. Texas has a uniquely important interest in the ERCOT market's regulation.

*Just Energy* held the state of Texas has an important interest in the types of claims at issue here. "[U]tility regulation 'is one of the most important of the functions traditionally associated with the police power of the States,'" *id.* (quoting *Wilson*, 8 F.3d at 315), while "federal courts have little interest in hearing" such matters. *Wilson*, 8 F.3d at 315. In

this special context, federal bankruptcy law does not "represent a supervening federal interest." *Id.* Challenges to the market-wide prices for energy set by state regulators during an unprecedented statewide emergency are better addressed in the designated state forum—not a federal bankruptcy court. The same is true for questions implicating limitations on ERCOT's liability to market participants promulgated by the PUCT.

Texas's powerful interest is "clear from the face of PURA," wherein the Legislature stated its purpose was to "establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities." *Just Energy*, 57 F.4th at 251 (quoting TEX. UTIL. CODE § 31.001(a)). Because the "electricity grid is entirely intrastate, the management of the market is 'a matter of particular importance to the state.'" *Id.* at 252 (quoting *Sierra Club,* 112 F.3d at 794). And "with state-agency PUCT in charge of virtually all pertinent considerations regarding the electricity market in Texas, TEX. UTIL. CODE § 32.001(a), (b), Texas's interest in th[e] litigation is paramount." *Id.*

The Legislature's determination that state control of the Texas energy market is "a matter of vital state interest," *Sierra Club*, 112 F.3d at 796, weighs in favor of *Burford* abstention.

>    **4.    Texas's grid and energy market require unified management and coherent policy.**

When "a state regulatory scheme faces potential disruption, such that it would crumble," abstention is proper. *Just Energy*, 57 F.4th at 252 (internal citation omitted). In energy regulation—as in gas-field or aquifer regulation—any decision made with respect to one party "necessarily affects other parties." *Sierra Club*, 112 F.3d at 794.

"Texas's wholesale electricity market" is "the type of complex state process that *Burford* aims to protect from undue federal influence." *Just Energy*, 57 F.4th at 251 (citation and internal quotations omitted). Yet, the money Entrust owes ERCOT for Storm-related energy is in turn owed to market participants for energy generated during the Storm. Thus, if the bankruptcy court were to void Entrust's monetary obligations to ERCOT, that decision will affect each of the hundreds of participants (and potentially their residential customers) in the ERCOT market. *Id.* at 253 ("Federal intervention necessarily affects all market participants.

Should ERCOT repay monies for the energy Just Energy expended, it would have to allocate the debt owed to other market participants.").

The Trustee's allegations are based on the same PUCT Orders, ERCOT Protocols, and SFA provisions that applied to all market participants during the Storm. Allowing a federal bankruptcy court to adjudicate these issues would encourage further attempts by other market participants to use the federal courts to evade Texas's regulatory jurisdiction. Federal intervention would undermine the State's efforts to stabilize the grid and market following the Storm by injecting needless uncertainty outside the PUCT and Legislature's control.

### 5. Texas has established centralized fora for judicial review.

Texas chose to "prevent the confusion of multiple review of the same general issues" by providing for "concentration of all direct review … in the State district courts of Travis County." *Burford*, 319 U.S. at 326; *see Wilson*, 8 F.3d at 316. Challenges to PUCT regulatory actions must be brought only in administrative proceedings, Travis County district court, or the Third Court of Appeals in Austin. TEX. GOV'T CODE §§ 2001.038(b), 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001, 39.001(e). The Trustee's challenge to ERCOT's Invoices must likewise be filed with

ERCOT in the first instance, with a right of appeal to the PUCT and then Travis County district court. *See supra* Statement of the Case § V.

"[B]ehind the guise of" the Trustee's bankruptcy and state-law claims "is its challenge to ERCOT's pricing decision and invoices." *Just Energy*, 57 F.4th at 254. The Trustee's challenges to the PUCT and ERCOT's pricing decisions should be decided through the specific state review process established by the Legislature, where they can be resolved on a uniform basis by decisionmakers with statewide jurisdiction—not by collateral attacks producing scattershot decisions from courts with jurisdiction over a tiny fraction of the market participants (and no jurisdiction over the state agency whose regulatory commands are ultimately at issue). *Id.*

Where the *Burford* factors are "lopsided in favor of abstention," *Burford* applies, and abstention is warranted. *Id.*

## III. The Trustee's Pricing Claims are barred by the filed rate doctrine.

"The filed rate doctrine bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *TCE,* 413 F.3d at 507. A "filed rate" is "one approved by the governing regulatory agency," and it "is per se reasonable and

unassailable in judicial proceedings brought by ratepayers." *Id.* at 508. The longstanding doctrine is premised on the principle that it should be "up to the respective governmental agency to determine whether the rates were discriminatory or unlawful, not the courts." *Id.* at 507-08 (citing *Keogh v. Chi. & Nw. Ry. Co.*, 260 U.S. 156, 164 (1922)). Judicial review is instead limited to the procedures prescribed by the administrative framework.

The filed rate doctrine applies "across the spectrum of regulated utilities," *Ark. La. Gas Co. v. Hall*, 453 U.S. 571, 577 (1981), including in "energy cases" where it "preclude[s] lawsuits against companies based on rates that were filed with a government agency," *TCE*, 413 F.3d at 508; *see Winn v. Alamo Title Ins. Co.*, No. A-09-CA-214-SS, 2009 WL 7099484, at *3 (W.D. Tex. May 13, 2009) (collecting cases dismissing claims based on the filed rate doctrine). The doctrine applies "equally strongly to regulation by state agencies," *TCE*, 413 F.3d at 509, and bars relief in all courts, including bankruptcy courts, *see, e.g.*, *In re Enron Corp.*, 328 B.R. 75, 78, 85-86 (S.D.N.Y. 2005) (holding that the filed rate doctrine barred a claimant's antitrust claims based on allegations that the debtor was "overcharged" for "wholesale electricity").

By prohibiting collateral attacks on energy prices, the filed rate doctrine instead defers challenges to the regulatory agency and then any prescribed judicial-review process. *Ark. La. Gas Co.*, 453 U.S. at 577-78; *see also Miss. Power & Light Co. v. Miss. ex rel. Moore*, 487 U.S. 354, 375 (1988). The filed rate doctrine both "preserv[es] … the agency's primary jurisdiction over reasonableness of rates," *Ark. La. Gas Co.*, 453 U.S. at 577-78, and upholds the "nondiscrimination principle" by ensuring that "victorious plaintiffs [do not] wind up paying less than non-suing ratepayers." *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 262, 265 (2d Cir. 2015). Indeed, "[t]he doctrine prevents more than [just] judicial rate-setting; it precludes any judicial action which undermines agency rate-making authority." *Id.* at 262 (citation and internal quotations omitted).

## A. The $9,000/MWh price is a filed rate.

The $9,000/MWh wholesale energy price charged to Entrust and every other ERCOT market participant during the Storm constitutes a filed rate. In *TCE*, this Court held that the PUCT's oversight authority over ERCOT energy pricing brings those rates within the filed rate doctrine. *TCE*, 413 F.3d at 509-10; *see also Util. Choice, L.P. v. TXU Corp.*, No. H-05-573, 2005 WL 3307524, at *2 (S.D. Tex. Dec. 6, 2005)

("[T]he Fifth Circuit has held that the filed rate doctrine bars claims for damages stemming from rates approved by the PUCT in the Texas energy market."). This Court held that "market-based energy rates" are considered filed rates if they are subject to regulatory oversight and review. *TCE*, 413 F.3d at 509. Because PURA vests the PUCT with oversight authority for energy prices, the "PUCT's oversight over the market is sufficient to conclude that the BES energy rates are 'filed' within the meaning of the filed rate doctrine." *Id.* at 510; *see also Util. Choice, L.P.*, 2005 WL 3307524, at *2 n.6 (extending *TCE's* holding to bilateral transactions in the ERCOT market).

The same PUCT statutes and regulations remain in force and apply equally to the ERCOT market price at issue here. *See, e.g.*, TEX. UTIL. CODE §§ 35.004(f), 39.101(a)(1), 39.151; 16 TEX. ADMIN. CODE §§ 25.1(a), 25.501(a). Thus, the price charged by ERCOT in the wholesale market constitutes a filed rate based on the PUCT's broad oversight authority. But the PUCT's issuance of the Orders during the Storm makes the filed rate doctrine's applicability all the more unmistakable—the rate was not only approved by the PUCT but set in compliance with its Orders.

**B.    The Pricing Claims undermine the PUCT's regulatory authority and seek a discriminatory rate.**

In *TCE*, this Court affirmed dismissal of claims against ERCOT, power generators, and market participants for allegedly conspiring to manipulate ERCOT rates "during severe winter weather" when "the price for electricity on the [ERCOT] market soared." 413 F.3d at 506-07. The district court also applied the doctrine to dismiss a breach of contract claim against ERCOT based on "ERCOT's [alleged] failure to follow its own protocols." *Tex. Com. Energy v. TXU Energy, Inc.*, No. C-03-2469, 2004 WL 1777597, at *17 (S.D. Tex. June 24, 2004), *aff'd on other grounds*, 413 F.3d 503 (5th Cir. 2005). *TCE* controls this case.

The Trustee premises her Complaint on the allegations that ERCOT's $9,000/MWh energy price during the Storm was illegal, excessively high, and not permitted by the "vague[]" PUCT Orders, ROA.291 ("The February 15 PUCT Order did not direct ERCOT to set prices at $9,000/MWh, nor did it instruct ERCOT to make any specific changes to its Protocols … [and it] did not give ERCOT self-executing authority to set prices at the HCAP level[.]"), or the Protocols, ROA.295 ("ERCOT unlawfully breached its Protocols when it passed along these

improperly high costs to market participants."). The attack on price alone warrants dismissal under the filed rate doctrine.

But in the Pricing Claims, the Trustee goes further, seeking a judicial determination of a different fair value of the rate charged. First, in Count I, "[t]he Trustee seeks to reduce the ERCOT Claim" and asks the Court to "determine the amount of the ERCOT Claim in lawful currency of the United States[.]" ROA.300-01. Counts III and IV allege that Entrust did not receive reasonably equivalent value for the energy it purchased during the Storm—a determination which would necessarily require the bankruptcy court to retroactively determine what the price of energy would have been absent the PUCT's intervention. ROA.304-06. Finally, in Count VI, the Trustee challenges ERCOT's actions in changing the Reliability Deployment Price Adder ("RDPA") to implement the price at issue. ROA.308. But determining the allegedly proper amount of ERCOT's claim (whether that claim amount is the full amount, zero, or a number in between) would constitute a *de facto* determination by the bankruptcy court of a different, purportedly proper, utility rate. And *any* theory or request for relief—even a claim objection—that second guesses a filed rate instead of taking that rate as proper must be

dismissed. *See Winn*, 2009 U.S. Dist. LEXIS 65889, at *3.[11] The bankruptcy court erred in failing to do so.

## C.   No exception to the filed rate doctrine applies.

This Court has recognized the issues presented here are premised on whether ERCOT charged "a lawful filed rate calculated in accordance with market-based protocols." *Just Energy*, 57 F.4th at 254. Contrary to the Trustee's assertions, *e.g.*, ROA.230-31, this action does not fall within an exception to the filed rate doctrine. The Trustee claims the filed rate doctrine does not preclude a court from reviewing whether an entity misapplied a rate. ROA.231. In doing so, the Trustee suggests that the filed rate is the rate that would have resulted under the Protocols and a normally functioning market, and asked the bankruptcy court to ignore the actions of the PUCT both during and after the Storm. ROA.411.

The filed rate is not a rate that may have been set in a different reality; it is the "one approved by the governing regulatory agency[.]" *Tex.*

---

[11] In *In re Enron*, the bankruptcy court sustained a debtor's objection to a proof of claim based on the filed rate doctrine and found *no relief available* to a claimant whose proof of claim alleged price manipulation with respect to a filed rate. *In re Enron*, 328 B.R. at 78. Even if the court could ultimately award relief at the filed rate, the claimant's legal rights "would *have to be measured*" by a filed rate in a tariff in the first place. *Id.* at 84-85 (emphasis added).

*Com. Energy*, 2004 WL 1777597, at *7 (citing *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 18 (2d Cir. 1994)). The $9,000/MWh price about which the Trustee complains was not only "approved" by the PUCT—when it declined to take any action during the Storm or afterward to change that price—but *directed* by the PUCT when it issued the Orders in the first place. ROA.181-83, 185-88. Even if the PUCT had never issued its pricing Orders during the Storm, the price charged by ERCOT in the wholesale energy market would constitute the filed rate, unassailable in a collateral attack like the Trustee's, precisely because of the PUCT's regulatory oversight of the ERCOT market. *TCE*, 413 F.3d at 510 ("PUCT's oversight over the market is sufficient to conclude that the BES energy rates are 'filed' within the meaning of the filed rate doctrine."); *Util. Choice,* 2005 WL 3307524, at * 2 ("[T]he Fifth Circuit has held that the filed rate doctrine bars claims for damages stemming from rates approved by the PUCT in the Texas energy market.") (citing *TCE*, 413 F.3d at 509-10).

Because the Pricing Claims challenge the rate charged during the Storm as illegal and excessive, they violate the filed rate doctrine and must be dismissed.

**IV. The bankruptcy court abused its discretion in refusing to dismiss the adversary proceeding under Rule 12(b)(7).**

The PUCT is an indispensable party because it has an interest in the suit that it cannot protect as a nonparty *and* because its absence subjects ERCOT to multiple, potentially inconsistent obligations. Yet, it is infeasible to join the PUCT because it is immune from suit and because the Rule 19(b) factors for determining whether a case can proceed in an indispensable party's absence all favor dismissal. The bankruptcy court erroneously refused to dismiss the adversary proceeding on this ground.

**A. The PUCT is an indispensable party.**

Determining whether a case should be dismissed for failure to join an indispensable party is a two-step inquiry. *Hood ex rel. Miss. v. City of Memphis*, 570 F.3d 625, 628 (5th Cir. 2009). First, a court decides whether a party is indispensable under Rule 19(a). *Id.* If the party is indispensable, a court determines if the case can proceed in the party's absence under Rule 19(b). *Id.* at 629.

Federal Rule of Civil Procedure 19(a)(1)(B) provides that a party is indispensable if (1) its absence will impair its ability to protect its interest relating to the subject matter of the action or (2) will leave an existing

party subject to a substantial risk of incurring "multiple, or otherwise inconsistent obligations." Both grounds are satisfied here.

### 1. The PUCT has an interest in this case that it cannot protect as a nonparty.

Under the APA, a state agency must be a party to any action challenging the "validity or applicability" of its rules. TEX. GOV'T CODE §§ 2001.038(a), (c); *Tex. Dep't of Pub. Safety v. Salazar*, 304 S.W.3d 896, 904 (Tex. App.—Austin 2009, appeal dismissed) (noting in the same way claims challenging the validity of ordinances or statutes must be brought against the government entity that made the statute or ordinance, "the APA requires that the relevant state agency be made a party to any action challenging the validity of an agency rule").[12] As a practical matter, only an agency can defend the validity of its own rules or orders. *See Salazar*, 304 S.W.3d at 904. Thus, adjudication of the validity of an agency's regulatory action absent the agency necessarily impairs the agency's ability to protect its interests.

---

[12] "[A] federal court can look to state law to determine the relative interest that the party has in the litigation" under Rule 19. *Whalen v. Carter*, 954 F.2d 1087, 1096 n.8 (5th Cir. 1992).

The Trustee claims ERCOT's calculations (in compliance with the PUCT Orders) were not authorized and violated the SFA and Protocols. *E.g.*, ROA.302. Although the Trustee seeks a repricing of the market without reference to the PUCT Orders, the requested relief would eliminate the PUCT's power to "otherwise direct" the price of electricity in the ERCOT market. 16 TEX. ADMIN. CODE § 25.501(a). This is an attack on the PUCT Orders and the PUCT's role in regulating Texas's electricity market.

The Trustee cannot attack the applicability of the PUCT Orders without the PUCT's presence. ERCOT cannot—and should not be required to—defend the PUCT's regulatory actions for the PUCT; the PUCT is entitled to defend itself. *Lee*, 47 F.4th at 265 (holding that licensees of a university's trademarks could not adequately defend the university's ownership of the marks and that the university was an indispensable party).

Moreover, the PUCT is required to "establish a comprehensive and adequate regulatory system for electric utilities to assure rates, operations, and services that are just and reasonable to the consumers and to the electric utilities." TEX. UTIL. CODE § 31.001(a). The PUCT's

45

absence will undermine its ability to carry out its regulatory responsibilities. In addition to this case, there are several pending state-court challenges to the PUCT Orders' validity or applicability, to which the PUCT is a party. *See supra* Statement of Case § V. Inconsistent rulings on the validity of the Orders—which applied to *every* participant in the ERCOT market—might require disparate treatment of participants in an interdependent market. This would be unworkable and would undermine the PUCT's ability to administer the market.

Further, were the bankruptcy court to rule in the Trustee's favor, it would—despite the PUCT's absence—create a negative precedent that might influence state-court actions. This Court has recognized that "the establishment of a negative precedent can provide the requisite prejudice to the absentee." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1310 (5th Cir. 1986).

### 2. ERCOT faces substantial risk if the PUCT is not a party.

The threat of inconsistent rulings regarding the PUCT Orders' applicability is especially problematic for ERCOT. The Orders and the resulting price applied market-wide, and the pending state-court

proceedings seek market-wide remedies that will bind the PUCT. This proceeding, by contrast, seeks a ruling that does not bind the PUCT.

ERCOT faces the prospect of the adversary proceeding culminating in a judgment that is inconsistent with either the PUCT Orders themselves, the pending state court actions to which the PUCT is a party, or both. Because ERCOT cannot disobey either a court judgment *or* the PUCT, TEX. UTIL. CODE § 39.151(d), permitting the bankruptcy court to adjudicate claims challenging the PUCT and ERCOT's actions in the PUCT's absence threatens to put ERCOT in an untenable position.

## B. The PUCT cannot be joined.

Because the PUCT is indispensable, the bankruptcy court cannot adjudicate the Trustee's claims unless the PUCT is joined as a party. But because the PUCT enjoys sovereign immunity, joinder is not feasible and dismissal is required. As this Court recently held, where an otherwise required party "cannot enter the scrum without waiving its immunity, its sovereign interest is necessarily impaired," and there is "very little room for balancing of other factors set out in Rule 19(b)." *Lee*, 47 F.4th at 267-68 (citations omitted). A necessary party's sovereign immunity is therefore "enough to require dismissal of the action." *Id*. Because the

PUCT is a necessary party that must—but because of its sovereign immunity cannot—be joined, the action should have been dismissed.[13] The bankruptcy court abused its discretion in failing to dismiss the adversary proceeding under Rule 12(b)(7). *Rajet Aeroservicios S.A. de C.V. v. Cervantes*, 801 F. App'x 239, 245 (5th Cir. 2020) ("A ruling 'based on an erroneous view of the law' constitutes … an abuse of discretion." (quoting *Hood ex rel. Miss.*, 570 F.3d at 628 (citation omitted))).

---

[13] While the PUCT's immunity makes examination of the Rule 19(b) factors unnecessary, they militate in favor of the same result. *See* FED. R. CIV. P. 19(b); *Schutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970). The first factor favors dismissal because the PUCT's absence will prejudice ERCOT by exposing it to inconsistent obligations to both the PUCT and market participants and by requiring ERCOT to take actions beyond its statutory authority. *Enter. Mgmt. Consultants, Inc. v. United States ex rel. Hodel*, 883 F.2d 890, 894 n.4 (10th Cir. 1989) (stating prejudice inquiry under Rule 19(b) "is essentially the same as the inquiry under Rule 19(a)(2)(i) into whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest"). The second factor favors dismissal because there is no method by which a judgment rendered without the PUCT can lessen the prejudice or inconsistent obligations facing ERCOT and the PUCT. The third factor favors dismissal because any judgment excluding the PUCT will be inadequate, as it leaves open the question of the market-wide effect of a contrary state-court judgment that *does* bind the PUCT. Finally, the fourth factor favors dismissal because the Trustee has an adequate state remedy, as she may challenge both the PUCT Orders and ERCOT's other conduct pursuant to Texas's statutory framework.

## V.   ERCOT does not owe Entrust a legal duty.

A gross negligence claim requires the existence of a cognizable legal duty. *See Ford v. Cimarron Ins. Co.*, 230 F.3d 828, 830 (5th Cir. 2000) ("Duty is the threshold inquiry of any negligence case."). Under Texas law, a negligence plaintiff must establish that the defendant owes a legal duty to him. *See Elephant Ins. Co., LLC v. Kenyon*, 644 S.W.3d 137, 145 (Tex. 2022). And without a legal duty, a defendant cannot be held liable in tort. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 795 (Tex. 2006).

The Trustee cannot identify a specific legal duty owed to Entrust that can form the basis of a tort. Instead, the Trustee relies on ERCOT's legislatively required function to ensure the reliability of the grid as the basis for her gross negligence claim. ROA.307-08. But this does not translate to a tort duty owed to Entrust. *See, e.g.*, *Entex, A Division of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1, 9–10 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (statute requiring gas utilities to furnish systems that are "safe, adequate, efficient, and reasonable" did not prohibit or require any conduct and could not provide adequate basis for imposing a negligence duty).

The Trustee also alleges a generic duty to "take reasonable care in estimating and planning for the amount of generation capacity and load that would result from Winter Storm Uri." ROA.307. No Texas court has ever recognized this duty, and the Supreme Court of Texas cautions against creating new common law duties when a comprehensive regulatory scheme exists. *Elephant Ins. Co.*, 644 S.W.3d at 152 (affirming dismissal of negligence, negligent undertaking, and gross negligence claims because no legal duty existed and imposition of a new court-created common law duty was not warranted). "Courts may not hold people to very general duties of exercising ordinary care in all circumstances." *Id*. at 145.

Finally, the Trustee's reliance on PURA (TEX. UTIL. CODE § 39.151(a)(2)) and the Administrative Code (16 TEX. ADMIN. CODE § 25.361(b)) for a private tort duty is misplaced. ROA.307. First, those statutory provisions do not impose any common law duties and do not create any private cause of action for damages. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981); *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004). Second, a duty imposed

by statute, "is not equivalent to a duty in tort." *Perry v. S.N.*, 973 S.W.2d 301, 304-09 (Tex. 1998); *see also Entex*, 94 S.W.3d at 9-10.

Because the Trustee fails to allege a cognizable private tort duty owed by ERCOT to Entrust, the Trustee's gross negligence claim must be dismissed.

## VI. ERCOT is immune from the Trustee's tort claims.

### A. ERCOT shares Texas's Eleventh Amendment immunity.

ERCOT is entitled to Eleventh Amendment immunity because, under this Court's six-part test, ERCOT is an "arm of the state." *See Daniel*, 960 F.3d 254, 256-57. These factors are examined as a whole; no factor is dispositive, though the source of the entity's funding is especially important. *Id.* at 257; *Sw. Bell Tel. Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001).

#### 1. Texas statutes and case law view ERCOT as an arm of the State.

Texas law places obligations on ERCOT that are consistent with its status as an arm of the state. ERCOT is a "state agency" for the purposes of the Sunset Act. TEX. UTIL. CODE § 39.151(n); TEX. GOV'T CODE § 325.002(1). ERCOT's governing body is chosen by the State and includes state officials, and ERCOT and its governing body are subject to

open-meeting, conflict-of-interest, and anti-lobbying statutes. *See, e.g.*, TEX. UTIL. CODE §§ 39.151(g)-(g-6),[14] 39.1511, 39.1512. The questions of whether ERCOT is a "governmental unit" or has state-law sovereign immunity have divided Texas courts and are currently before the Supreme Court of Texas. *See ERCOT v. Panda Power Generation Infrastructure Fund, LLC*, No. 22-0196 (Tex. Sept. 2, 2022); *CPS Energy v. ERCOT*, No. 22-0056 (Tex. Sept. 2, 2022).[15]

### 2.    The State of Texas funds ERCOT.

ERCOT is funded by a State-created, PUCT-set regulatory fee collected using state power from the entities ERCOT regulates. TEX. UTIL. CODE § 39.151(e). Market participants must pay the fee or face state penalties. *Id.* § 39.151(j). The PUCT exercises ultimate appropriation authority over the fee. *Id.* §§ 39.151(d), (d-1), (e).

### 3.    The State directly controls ERCOT.

ERCOT's governing board consists of two state officials, ERCOT's board-selected and PUCT-approved CEO, and eight members selected by

---

[14] Added by Acts 2021, 87th Leg., R.S., Ch. 425 (S.B. 2), eff. June 8, 2021.

[15] Oral arguments in *CPS* and *Panda* were heard on January 9, 2023, in the Supreme Court of Texas. The docket in *CPS* is available at https://bit.ly/3BRWGjM, and the docket in *Panda* is available at https://bit.ly/3f6kk2P.

a specialized committee whose members are chosen by the governor, lieutenant governor, and speaker of the House. *Id.* §§ 39.151(g), 39.1513(a). ERCOT is further subject to the PUCT's plenary control, including over its rulemaking power, internal governance, and bylaws. *Id.* §§ 39.151(d), (g-1), (g-6); *see Daniel*, 960 F.3d at 258-59.

### 4. ERCOT is concerned with statewide problems.

ERCOT regulates a grid and wholesale power market that covers about 90% of the State's electric load over 213 of Texas's 254 counties. TEX. UTIL. CODE § 39.151(a).

### 5. The State has ultimate control over ERCOT's property.

The State, which funds and exercises plenary control over ERCOT, freely uses ERCOT's revenue and resources to operate a variety of state agencies and legislative priorities. *E.g.*, TEX. UTIL. CODE §§ 38.202(d), 39.1515(a), 39.1516, 39.917(g). If ERCOT is decertified, the PUCT *must* "transfer [ERCOT's] assets to the successor organization." *Id.* § 39.151(d). Thus, ERCOT's assets are functionally those of the State. *See Daniel*, 960 F.3d at 260.

**6. While ERCOT may sue and be sued in its own name, this fact bears minimally on its immunity.**

In Texas, state law not only permits—but often requires—suit to be brought against a governmental unit rather than against the State itself. *See* TEX. CIV. PRAC. & REM. CODE § 101.102(b); *Abbott v. Mex. Am. Legis. Caucus*, 647 S.W.3d 681, 703-04 (Tex. 2022); *see also Tooke v. City of Mexia*, 197 S.W.3d 325, 341-42 (Tex. 2006) (holding statute permitting a governmental entity to "sue or be sued" does not waive its immunity). Accordingly, this factor has limited relevance. *See United States ex rel. King v. Univ. of Tex. Health Sci. Ctr.-Hous.*, 544 F. App'x 490, 498 n.3 (5th Cir. 2013).

**B. ERCOT's immunity has not been waived.**

The Bankruptcy Code purports to waive the immunity of a "governmental unit" that has filed a proof of claim only "with respect to a claim against such governmental unit that is property of the estate *and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose*." 11 U.S.C. § 106(b) (emphasis added). The Trustee argues that ERCOT waived immunity "by filing its proofs of claim." ROA.441. But § 106 only provides a waiver of sovereign immunity

for claims under the Bankruptcy Code as they relate to the proof of claim the defendant filed. *See* 11 U.S.C. § 106(b).

ERCOT's proof of claim relates to the unpaid invoices for Entrust's purchases in the ERCOT market during the Storm. *In re Entrust Energy, Inc.*, No. 21-31070, Claim 107 (Bankr. S.D. Tex. Aug. 10, 2021). The Trustee's gross negligence claim does not arise out of the same transaction or occurrence as ERCOT's proof of claim. Rather, it is premised on ERCOT's alleged failure to maintain reliability of the Texas grid. ROA.307-08. In that regard, it does not implicate the ERCOT claim or any bankruptcy principle. ERCOT's immunity therefore remains intact. *See Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 341 (5th Cir. 2011).

## CONCLUSION

ERCOT respectfully requests that this Court REVERSE the order of the bankruptcy court and instruct the bankruptcy court to abstain under *Burford* or RENDER judgment that the Complaint be dismissed.

Dated: March 28, 2023     Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Jamil N. Alibhai*
Jamil N. Alibhai (SBT 00793248)
Kevin M. Lippman (SBT 00784479)
3800 Ross Tower
500 N. Akard Street
Dallas, TX 75201
Telephone: (214) 855-7500
jalibhai@munsch.com
klippman@munsch.com

-and-

**ALEXANDER DUBOSE & JEFFERSON LLP**

Wallace B. Jefferson (SBT 00000019)
Nicholas Bacarisse (SBT 24073872)
515 Congress Avenue, Suite 2350
Austin, TX 78701
Telephone: (512) 482-9300
wjefferson@adjtlaw.com
nbacarisse@adjtlaw.com

***Counsel for Electric Reliability Council of Texas, Inc.***

**CERTIFICATE OF SERVICE**

On March 28, 2023, a true and correct copy of the foregoing was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Fifth Circuit, which currently provides electronic service on the counsel of record.

*/s/ Jamil N. Alibhai*
Jamil N. Alibhai

# CERTIFICATE OF COMPLIANCE

I certify that:

1.     This brief complies with the type-volume requirements of FED. R. APP. P. 32(a)(7) because it contains 10,919 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.     This brief complies with the typeface and type-style requirements of FED. R. APP. P. 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word in 14-point font, Century Schoolbook type style.

By: */s/ Jamil N. Alibhai*

Jamil N. Alibhai

4875-4620-1420v.2