No. 22-20603

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

IN THE MATTER OF ENTRUST ENERGY, INCORPORATED, *ET AL.*,
*Debtor*,

ANNA PHILLIPS, AS TRUSTEE OF THE ENTRUST LIQUIDATING
TRUST,
*Appellee/Cross-Appellant*,

v.

ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,
*Appellant/Cross-Appellee.*

On Appeal from the United States Bankruptcy Court
Southern District of Texas, Houston Division
Adv. No. 22-3018

## APPELLANT/CROSS-APPELLEE'S
## COMBINED RESPONSE & REPLY BRIEF

Wallace B. Jefferson
Nicholas Bacarisse
wjefferson@adjtlaw.com
nbacarisse@adjtlaw.com
Alexander Dubose & Jefferson
LLP
515 Congress Avenue
Ste. 2350
Austin, Texas 78701
Telephone: (512) 482-9300

Jamil N. Alibhai
Kevin M. Lippman
jalibhai@munsch.com
klippman@munsch.com
Munsch Hardt Kopf & Harr,
P.C.
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................i

TABLE OF AUTHORITIES........................................................iv

INTRODUCTION......................................................................1

SUMMARY OF ARGUMENT ................................................1

ARGUMENT ............................................................................5

I.  The bankruptcy court erred by refusing to abstain under *Burford*. ......................................................................5

    A.  *Just Energy* and *CPS Energy* are dispositive and require abstention under *Burford*...........................................5

        1.  The filing of a proof of claim does not cut against abstention. ........................................................6

        2.  Abstention would not cause undue delay..........................8

        3.  Abstention is warranted in a proceeding seeking damages. .............................................................10

    B.  All five *Burford* factors weigh in favor of abstention. ............13

        1.  The Trustee's claims raise significant issues of Texas law. ..........................................................13

        2.  The Trustee's claims require the bankruptcy court to resolve unsettled issues of Texas law. ............................14

        3.  Texas has a uniquely important interest in the ERCOT market's regulation. .......................................17

        4.  Texas's grid and energy market require unified management and coherent policy....................................17

        5.  Texas has established centralized, exclusive fora for judicial review...............................................19

II.  The filed rate doctrine bars the Trustee's claims.........................20

    A.  The Trustee's claims strike at the core of the filed rate doctrine. ...............................................................20

    B.  Post hoc calculation of what the rate might have been under different circumstances is not within the bankruptcy court's province...................................................................26

i

III. The bankruptcy court erred in failing to dismiss the Complaint under Rule 12(b)(7) for failure to join the indispensable PUCT...28

    A. The PUCT is a necessary party.................................................28

        1. No matter how she attempts to reframe her claims, the relief the Trustee seeks implicates the PUCT. ...............28

        2. The Trustee's claims threaten to leave ERCOT subject to multiple inconsistent obligations. ...................................31

    B. The PUCT cannot be joined. ....................................................34

IV. ERCOT is immune from the Trustee's tort claim. ........................37

    A. The State of Texas considers ERCOT immune, and the Sovereign's decision should be dispositive.............................37

    B. ERCOT has Eleventh Amendment immunity under the *Clark* factors. ....................................................................................39

        1. View of courts and statutes ............................................40

        2. Source of funding............................................................43

        3. Lack of local autonomy ..................................................44

        4. The State's control over ERCOT's property ....................46

        5. Ability to sue and be sued ..............................................46

    C. ERCOT has not waived its immunity with respect to the Trustee's tort claim. ...............................................................47

        1. The Trustee's tort claim is not a compulsory counterclaim to ERCOT's proof of claim. ...............................................47

        2. The Trustee waived any waiver argument under § 106(c), which fails in any event...................................................52

V. ERCOT does not owe Entrust a legal duty....................................53

VI. The bankruptcy court properly dismissed the Trustee's takings claim. ....................................................................................56

    A. The Trustee failed to plead the elements of her takings claim, and the claim was dismissed on that basis.............................56

    B. Additional reasons support dismissal of the takings claim. ..59

CONCLUSION ...................................................................................60

CERTIFICATE OF SERVICE..................................................62

CERTIFICATE OF COMPLIANCE.......................................63

# TABLE OF AUTHORITIES

| Cases | Page(s) |
|---|---|

*Alden v. Maine,*
 527 U.S. 706 (1999) .................................................................. 38, 39

*Alexander v. Sandoval,*
 532 U.S. 275 (2001) ......................................................................... 53

*Bellotti v. Baird,*
 428 U.S. 132 (1976) ........................................................................... 9

*Bonin v. Sabine River Auth.,*
 65 F.4th 249 (5th Cir. 2023) ...................................................... 42, 58

*Bowman v. Birmingham Transit Co.,*
 280 F.2d 531 (5th Cir. 1960) ........................................................... 58

*Broad. Music, Inc. v. Armstrong,*
 No. EP–13–CV–0032–KC, 2013 WL 3874082 (W.D. Tex. July 24,
 2013) ................................................................................................ 33

*Broward Cnty. Fl. v. Wickman,*
 195 F.2d 614 (5th Cir. 1952) ........................................................... 38

*Brown v. De La Cruz,*
 156 S.W.3d 560 (Tex. 2004) ............................................................ 54

*Brown v. MCI WorldCom Network Servs., Inc.,*
 277 F.3d 1166 (9th Cir. 2002) ......................................................... 24

*Burford v. Sun Oil Co.,*
 319 U.S. 315 (1943) ................................................................. *passim*

*Clark v. Tarrant Cnty.,*
 798 F.2d 736 (5th Cir. 1986) .................................................... *passim*

*Clarkston v. White,*
 943 F.3d 988 (5th Cir. 2019) ........................................................... 59

*Cnty. of Allegheny v. Frank Mashuda Co.*,
  360 U.S. 185 (1959) ............................................................... 11

*Coors Brewing Co. v. Mendez-Torres*,
  678 F.3d 15 (1st Cir. 2012) ....................................................... 7

*CPS Energy v. Electric Reliability Council of Texas*,
  ---S.W.3d---, No. 22-0056, No. 22-0196, 2023 WL 4140460 (Tex. June
  23, 2023) ................................................................... *passim*

*Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.*,
  943 F.3d 265 (5th Cir. 2019) .................................................. 38

*Cuyler v. United States*,
  362 F.3d 949 (7th Cir. 2004) .................................................. 55

*Daniel v. Univ. of Tex. Sw. Med. Ctr.*,
  960 F.3d 253 (5th Cir. 2020) .................................................. 46

*Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*,
  956 F.3d 813 (5th Cir. 2020) .................................................. 56

*Devillier v. Texas*,
  53 F.4th 904 (5th Cir. 2023) .................................................. 59

*Drew v. MCI WorldCom Mgmt. Co., Inc.*,
  No. 3:99-cv-1355, 1999 WL 1087470 (N.D. Tex. Dec. 1, 1999) .... 23, 24

*El Paso Educ. Initiative, Inc. v. Amex Props., LLC*,
  602 S.W.3d 521 (Tex. 2020) .................................................. 41

*Electric Reliability Council of Texas, Inc. v. Just Energy Group, L.P.*,
  57 F.4th 241 (5th Cir. 2023) ............................................. *passim*

*In re Entergy Corp.*,
  142 S.W.3d 316 (Tex. 2004) .................................................. 17

*Entex, A Division of Noram Energy Corp. v. Gonzalez*,
  94 S.W.3d 1 (Tex. App.—Houston [14th Dist.] 2002, pet. denied)..... 54

*In re Entrust Energy, Inc.*,
  No. 21-31070 ..................................................................... 49

*Ford v. Cimarron Ins. Co. Inc.*,
  230 F.3d 828 (5th Cir. 2000) ............................................................ 53

*Golden Spread Elec. Coop. v. Emerson Process Mgmt. Power & Water Sols., Inc.*,
  954 F.3d 804 (5th Cir. 2020) ............................................................ 49

*Hearts Bluff Game Ranch, Inc. v. Texas*,
  381 S.W.3d 468 (Tex. 2012) ............................................................ 17

*Hernandez v. Mesa*,
  140 U.S. 735 (2020) ........................................................................ 59

*In re Just Energy Group, Inc.*,
  No. 21-30823 (Bankr. S.D. Tex. June 20, 2023) [Dkt. 268] ......... 10, 12

*Kelo v. City of New London*,
  545 U.S. 469 (2005) ........................................................................ 58

*Knick v. Twp. of Scott*,
  139 S. Ct. 2162 (2019) .................................................................... 56

*Kroger Co. v. Elwood*,
  197 S.W.3d 793 (Tex. 2006) ............................................................ 53

*La. Power & Light Co. v. City of Thibodaux*,
  360 U.S. 25 (1959) .......................................................................... 11

*Lee v. Anthony Lawrence Collection, L.L.C.*,
  47 F.4th 262 (5th Cir. 2022) ................................................... 1, 3, 34

*Lehman Bros. v. Schein*,
  416 U.S. 386 (1974) .......................................................................... 9

*Lincoln Cnty. v. Luning*,
  133 U.S. 529 (1890) ........................................................................ 38

*Luminant Energy Co. v. PUCT*,
  665 S.W.3d 166 (Tex. App.—Austin 2023, pet. filed) ....... 16, 22, 28, 29

*McDaniel v. Anheuser-Busch, Inc.*,
  987 F.2d 298 (5th Cir. 1993) ..................................................... 49, 50

*Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n,*
　453 U.S. 1 (1981) ............................................................... 54

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,*
　429 U.S. 274 (1977) ........................................................... 39

*N. Valley Commc'ns, LLC v. MCI Commc'ns Servs., Inc.,*
　Nos. CIV. 07-1016, CIV. 07-4106, 2008 WL 2627519 (D.S.D. June 26,
　2008) ......................................................................... 24, 25

*N.Y. Life Ins. Co. v. Deshotel,*
　142 F.3d 873 (5th Cir. 1998) ........................................... 48, 49

*Occidental Chem. Corp. v. La. Pub. Serv. Comm'n,*
　494 F. Supp. 2d 401 (M.D. La. 2007) ............................... 23, 24

*Ohio Bureau of Employment Services v. Hodory,*
　431 U.S. 471 (1977) ............................................................. 6, 7

*Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC,*
　546 S.W.3d 133 (Tex. 2018) ................................................. 17

*Panda Power Generation Infrastructure Fund, LLC v. ERCOT, Inc.,*
　641 S.W.3d 893 (Tex. App.—Dallas 2022), *rev'd sub nom., CPS
　Energy v. Elec. Reliability Council of Tex.*, ---S.W.3d---, No. 22-0056,
　No. 22-0196, 2023 WL 4140460 (Tex. June 23, 2023).
　.................................................................................... 40

*Perry v. S.N.,*
　973 S.W.2d 301 (Tex. 1998) ................................................. 54

*Potrero Hills Landfill, Inc. v. Cnty. of Solano,*
　657 F.3d 876 (9th Cir. 2011) ................................................... 7

*Praesel v. Johnson,*
　967 S.W.2d 391 (Tex. 1998) ................................................. 55

*Preston Hollow Cap., LLC v. Cottonwood Dev. Corp.,*
　23 F.4th 550 (5th Cir. 2022) ................................................. 56

*PUC v. Constellation Energy Commodities Grp., Inc.*,
   351 S.W.3d 588 (Tex. App.—Austin 2011, pet. denied) .................... 15

*Pulitzer-Polster v. Pulitzer*,
   784 F.2d 1305 (5th Cir. 1986) ............................................................ 33

*Quackenbush v. Allstate Insurance Company*,
   517 U.S. 706 (1996) .............................................................. 10, 11, 13

*Randleman v. Fid. Nat. Title Ins. Co.*,
   465 F. Supp. 2d 812 (N.D. Ohio 2006) ................................................ 24

*Regents of the Univ. of Cal. v. Doe*,
   519 U.S. 429 (1997) ............................................................................ 39

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008) ............................................................................ 34

*Rivera v. Sonnenschein*,
   No. 03-21-00516-CV, 2022 WL 1751685 (Tex. App.—Austin June 1,
   2022, pet. denied) ............................................................................... 29

*Rollins v. Home Depot USA*,
   8 F.4th 393 (5th Cir. 2021) .......................................................... 6, 52

*Rothstein v. Balboa Ins. Co.*,
   794 F.3d 256 (2d Cir. 2015) .............................................................. 22

*Sierra Club v. City of San Antonio*,
   112 F.3d 789 (5th Cir. 1997) ...................................................... 14, 32

*Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*,
   62 F.4th 174 (5th Cir. 2023) ..................................................... *passim*

*Stratta v. Roe*,
   961 F.3d 340 (5th Cir. 2020) ............................................................. 58

*In re Supreme Beef Processors, Inc.*,
   391 F.3d 629 (5th Cir. 2004), *on reh'g en banc*,
   468 F.3d 248 (5th Cir. 2006) ............................................... 47, 48, 52

*In re Supreme Beef Processors, Inc.*,
   468 F.3d 248 (5th Cir. 2006) (en banc) ........................................ 47, 48

*Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*,
   952 S.W.2d 454 (Tex. 1997) ................................................. 42

*Tex. Dep't of State Health Servs. v. Balquinta*,
   429 S.W.3d 726 (Tex. App.—Austin 2014, pet. dismissed) ............... 29

*Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*,
   408 S.W.3d 696 (Tex. App.—Austin 2013, no pet.) ........................... 29

*Texas Commercial Energy v. TXU Energy, Inc.*,
   413 F.3d 503 (5th Cir. 2005) ..................................................... *passim*

*U.S. Fid. & Guar. Co. v. Quinn Bros. of Jackson, Inc.*,
   384 F.2d 241 (5th Cir. 1967) ................................................. 58

*Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*,
   662 F.3d 336 (5th Cir. 2011) ................................................. 53

*Vines v. Univ. of La. at Monroe*,
   398 F.3d 700 (5th Cir. 2005) ................................................. 50

*Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*,
   294 F.3d 684 (5th Cir. 2002) ................................................. 58

*Webb v. B.C. Rogers Poultry, Inc.*,
   174 F.3d 697 (5th Cir. 1999) ................................................. 11

*Wegoland Ltd. v. NYNEX Corp.*,
   27 F.3d 17 (2d Cir. 1994) ..................................................... 27

*Wilson v. Valley Elec. Membership Corp.*,
   1992 WL 233769 (E.D. La. Aug. 24, 1992), *aff'd*, 8 F.3d 311 (5th Cir. 1993) ................................................................................... 12

*Wilson v. Valley Electric Membership Corp.*
   8 F.3d 311 (5th Cir. 1993) ..................................................... 12, 13, 17

## Statutes

11 U.S.C. § 106 ............................................................... 47, 52

Tex. Gov't Code § 325.002 ........................................... 42

Tex. Gov't Code § 2001.038 ................................ 19, 28, 29

Tex. Gov't Code § 2001.176(b)(1) ............................... 19

Tex. Util. Code § 11.007(a) ...................................... 19

Tex. Util. Code § 15.001 .......................................... 19

Tex. Util. Code § 35.004(e) ...................................... 22

Tex. Util. Code § 39.001(e) ...................................... 19

Tex. Util. Code § 39.101(a)(1) ................................. 22

Tex. Util. Code § 39.151 ................................... *passim*

## Other Authorities

16 Tex. Admin. Code § 25.43(o)(2) ........................... 60

16 Tex. Admin. Code § 25.361(b) .............................. 53

16 Tex. Admin. Code § 25.365(c) .......................... 25, 26

16 Tex. Admin. Code § 25.501(a) ......................... 22, 23, 30

Fed. R. Civ. P. 12 ......................................... 2, 28, 31

Fed. R. Civ. P. 13 .............................................. 48

Fed. R. Civ. P. 19 ......................................... 34, 36

## INTRODUCTION

To overcome ERCOT's appeal, the Trustee must convince this Court to disregard three of its decisions: *Electric Reliability Council of Texas, Inc. v. Just Energy Group, L.P.*, 57 F.4th 241 (5th Cir. 2023); *Texas Commercial Energy v. TXU Energy, Inc.* ("*TCE*"), 413 F.3d 503 (5th Cir. 2005); and *Lee v. Anthony Lawrence Collection, L.L.C.*, 47 F.4th 262 (5th Cir. 2022), and the Supreme Court of Texas's recent holding that ERCOT is entitled to sovereign immunity in *CPS Energy v. Electric Reliability Council of Texas*, ---S.W.3d---, No. 22-0056, No. 22-0196, 2023 WL 4140460 (Tex. June 23, 2023). The Trustee cannot do so. This legal precedent regarding *Burford* abstention, the filed rate doctrine, the PUCT's regulatory authority and actions, and ERCOT's sovereign immunity requires abstention or dismissal of the Complaint.

## SUMMARY OF ARGUMENT

The bankruptcy court was required to abstain from hearing the Trustee's Complaint under *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). This Court held in *Just Energy* that *Burford* mandates abstention when an ERCOT market participant brings suit seeking to pay less than the rest of the ERCOT market for Storm-related invoices. *Just Energy*, 57

F.4th at 245. In *CPS Energy*, the Supreme Court of Texas found PURA "constitutes a pervasive regulatory scheme that imparts exclusive jurisdiction" to the PUCT on issues of the exact type raised in the Trustee's Complaint. *CPS Energy*, 2023 WL 4140460, at *7. Because *Just Energy* holds, and *CPS Energy* reiterates, Texas has a paramount interest in administering PURA without federal-court intervention, *Burford* abstention is required.

This Court's holding in *TCE* requires dismissal under the filed rate doctrine when an ERCOT market participant challenges ERCOT market rates. *TCE*, 413 F.3d at 510. The Trustee does just that by objecting to ERCOT's proof of claim and requesting the bankruptcy court calculate and apply to Entrust a rate that is different than the rate that bound the rest of the market during the Storm. The filed rate doctrine compels dismissal of the Complaint.

The bankruptcy court was also required to dismiss the Complaint under Rule 12(b)(7) for the Trustee's failure to join the indispensable, but immune, PUCT. The Trustee admits her Complaint—claiming in large part that ERCOT did not apply the PUCT Orders correctly—requires the bankruptcy court to interpret the PUCT Orders. Texas law requires the

PUCT to be a party to a proceeding where its rules or orders are to be interpreted or otherwise construed. This Court has held where a necessary party is immune from suit—as the PUCT is—dismissal is required. *Lee*, 47 F.4th at 268.

The bankruptcy court should have dismissed the Trustee's gross negligence claim for at least two reasons. First, the Trustee has not identified, and cannot identify, a legal duty ERCOT owes to Entrust. The Trustee's attempt to conjure a duty by reliance on statutory directives that ERCOT "ensure the reliability" of the electrical grid is unavailing because these directives have never been held to create any private cause of action, let alone a common law duty in tort to a market participant. Without a legal duty, the Trustee's gross negligence claim fails.

Second, as confirmed by the Supreme Court of Texas, ERCOT is an "arm of the state" and entitled to sovereign immunity. *CPS Energy*, 2023 WL 4140460, at *15. *CPS Energy* should end the sovereign-immunity inquiry, as the Framers intended that states themselves define the contours of their own immunity, and now Texas has done so with respect to ERCOT. Nonetheless, as demonstrated by its state certification, state-selected management, exercise of delegated sovereign power, and state

funding, ERCOT is immune from suit in exercising its function of managing Texas's intrastate wholesale power market under the prevailing test applied by this Court. ERCOT has not waived its sovereign immunity as to the gross negligence claim by filing a proof of claim in this proceeding. The Trustee's asserted waiver—§ 106(b)—only applies to claims that arise out of the "same transaction or occurrence" as the proof of claim. The proof of claim seeks payment of invoices under a contract, while the Trustee's gross negligence tort claim is premised on ERCOT's purported failure to manage the grid effectively and plan for severe winter weather over the past decade. These two claims do not arise out of the same transaction or occurrence.

For any of these reasons, this Court should reverse the bankruptcy court and order abstention under *Burford* or dismissal of the Complaint.

The bankruptcy court's ruling should, however, be affirmed with respect to the dismissal of the Trustee's takings claim. The Trustee cannot establish all the essential elements of this claim. Moreover, this Court's precedent forecloses a federal takings claim against a state actor, and Texas law shields ERCOT from liability to retail electricity providers for the conduct on which the Trustee's takings claim is based.

# ARGUMENT

## I.     The bankruptcy court erred by refusing to abstain under *Burford*.

### A.     *Just Energy* and *CPS Energy* are dispositive and require abstention under *Burford*.

In analogous circumstances, this Court held in *Just Energy* that the bankruptcy court must abstain under *Burford*. *Just Energy*, 57 F.4th at 254-55. And the Supreme Court of Texas's decision in *CPS Energy* strengthens the necessity for abstention. The Court found PURA's "grant of extensive authority to the PUC[T] over ERCOT … constitute[s] a pervasive regulatory scheme." *CPS Energy*, 2023 WL 4140460, at *7. The existence of a pervasive regulatory scheme is a key factor when evaluating whether *Burford* abstention is warranted because it highlights the paramount interest the state of Texas has in regulating its own electrical grid. The result should be no different in this appeal, and abstention is required.

The Trustee's arguments to the contrary were not briefed in the bankruptcy court. For the first time, the Trustee argues ERCOT's proof of claim precludes abstention, Appellee's Br. 18-19; abstention would cause undue delay and expense, *id.* at 20-21; and abstention is not warranted in an action seeking damages, *id.* at 21-23. These new theories

should be disregarded. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument by failing to raise it in the first instance in the district court—thus raising it for the first time on appeal."). Because the Trustee failed to raise these arguments against abstention in the bankruptcy court, *see* ROA.421-25, she cannot do so now. However, even if this Court considers the Trustee's new arguments, they are legally invalid and do not avoid the need for abstention.

### 1. The filing of a proof of claim does not cut against abstention.

The Trustee argues her adversary proceeding differs from *Just Energy* because ERCOT filed a proof of claim in this proceeding and did not in *Just Energy*. Appellee's Br. 18. The Trustee also takes issue with the fact that Just Energy paid the ERCOT invoices and then sought to claw back those payments. *Id.* at 19. These are distinctions without consequence. The question for this Court is whether the Trustee's claims in the adversary proceeding should be determined by the PUCT or a Texas state court—rather than the bankruptcy court.

The Trustee relies on *Ohio Bureau of Employment Services v. Hodory*, 431 U.S. 471, 480 (1977), a case involving *Younger* abstention. Contrary to what the Trustee would have this Court believe, the decision

against abstention in *Hodory* was not based on Ohio Bureau of Employment Services—"who in effect [is] the State of Ohio"—availing itself of the federal forum. *Id.* at 477-78. Rather, the state *opposed* abstention. *Id.* at 480; *see also Coors Brewing Co. v. Mendez-Torres*, 678 F.3d 15, 26 (1st Cir. 2012) (explaining that, in *Hodory*, the Ohio Bureau of Employment Services opposed abstention in the Supreme Court); *Potrero Hills Landfill, Inc. v. Cnty. of Solano*, 657 F.3d 876, 888 (9th Cir. 2011) (finding no "concerns of offending comity" where defendant opposed abstention and sought federal adjudication of plaintiff's claims). ERCOT has never opposed abstention—but has raised it at every opportunity. ROA.144-50, 364-68. Moreover, the Trustee cites no case law supporting her apparent contention that filing a proof of claim in bankruptcy means a creditor avails itself of the federal forum for all resultant litigation. *See* Appellee's Br. 18-20.

ERCOT's filing of a proof of claim is irrelevant because, as in *Just Energy*, the bankruptcy court will retain jurisdiction over core bankruptcy matters, while deferring to the state courts on state-law questions of broad import. *Just Energy*, 57 F.4th at 254 n.11. "[T]he answer central to [the Trustee's] claims can only be found in a specific

state forum," and "[w]ithout this answer, the bankruptcy proceedings cannot move forward." *Id*. at 254 n.11, 255. Moreover, the fact that *CPS Energy* acknowledged ERCOT's activities are "governmental" does nothing to bolster the Trustee's abstention argument and does not turn ERCOT's filing of a proof of claim into a mark against abstention. *CPS Energy*, 2023 WL 4140460, at *11, *see also* Appellee's Suppl. Br. 8. ERCOT's decision to file a proof of claim, regardless of whether ERCOT is considered "governmental," does not negate the need for a proper forum—the PUCT or a Texas state court—to decide the Trustee's claims in the adversary proceeding. *Just Energy*, 57 F.4th at 254.

As a result, the determination of the amount owed to ERCOT must be answered by a state court, *id.*, and the bankruptcy court will ultimately use that answer to resolve ERCOT's proof of claim. This is the very definition of comity, and abstention in favor of resolution by the Texas state courts is required.

## 2. Abstention would not cause undue delay.

Contrary to the Trustee's assertions, abstention in this proceeding would not cause undue delay. State fora are equipped—and required—to handle the Trustee's claims. The Supreme Court of Texas held PURA

(Tex. Util. Code § 39.151) "constitutes a pervasive regulatory scheme that imparts exclusive jurisdiction" to the PUCT. *CPS Energy*, 2023 WL 4140460, at *7. A designated forum equipped to handle these types of disputes eliminates the concern for undue delay. Even the strong federal interest in the expeditious disposition of bankruptcy matters cannot overcome the state's interest in retaining the "exclusive control and oversight of the [utility] market … in this electricity-related litigation." *Just Energy*, 57 F.4th at 251. In *Bellotti v. Baird*, a case the Trustee relies upon heavily, the Court acknowledged that even if the adjudication causes delay, it "does, of course, in the long run save time, energy, and resources and help build a cooperative judicial federalism." 428 U.S. 132, 150-51 (1976) (quoting *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974)).

Moreover, there is no risk of undue delay to Entrust. Entrust's plan of liquidation has been confirmed, and a trustee has been appointed. ROA.283. Further, any limited delay would affect ERCOT most as "the debtors' largest unsecured creditor," Appellee's Br. 20; *see also* ROA.299. ERCOT supports abstention in favor of the proper state court forum.

The Trustee argues her case is distinguishable from *Just Energy* because the *Just Energy* Chapter 15 proceedings are closed. Appellee's

Br. 21. This is not true. Only the proceedings for the entities that are not asserting claims against ERCOT have been closed. *See* Final Decree Closing Certain of the Chapter 15 Cases, *In re Just Energy Group, Inc.*, No. 21-30823 (Bankr. S.D. Tex. June 20, 2023) [Dkt. 268]. The proceedings for the entities asserting claims against ERCOT remain open, pending the outcome of the litigation. *Id.* ¶ 2 ("The Remaining Cases, (a) Just Energy Group Inc., Case No. 21-30823; (b) Fulcrum Retail Energy LLC, Case No. 21-30836; (c) Hudson Energy Services LLC, Case No. 21-30846; and (d) Just Energy Texas LP, Case No. 21-30865, shall remain open pending the entry of a final decree by this Court closing the Remaining Cases.").

The Trustee cannot avoid *Just Energy*, and abstention is warranted.

### 3. Abstention is warranted in a proceeding seeking damages.

The Trustee claims *Quackenbush v. Allstate Insurance Company*, 517 U.S. 706 (1996), bars the application of *Burford* abstention in cases seeking damages, as opposed to those seeking equitable relief. Appellee's Br. 21-23. *Quackenbush* imposes no such limitation.

The *Quackenbush* Court was clear: *even in "a damages action,"* a court may "postpone adjudication … pending the resolution by the state courts of a disputed question of state law." 517 U.S. at 730-31 (emphasis added). While a court may not *dismiss or remand* a federal suit for damages, it may stay the federal suit while the state court resolves the questions within its jurisdiction. *Id.* at 720-21, 731 (collecting cases that "did not arise within the 'equity' jurisdiction of federal courts" but warranted abstention, while holding that "federal courts have the power to *dismiss or remand* cases based on abstention principles only where the relief being sought is equitable or otherwise discretionary." (emphasis added)); *see La. Power & Light Co. v. City of Thibodaux*, 360 U.S. 25, 28-30 (1959); *Cnty. of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 190 (1959); *see also Webb v. B.C. Rogers Poultry, Inc.*, 174 F.3d 697, 701 n.5 (5th Cir. 1999) (noting that *Quackenbush* permits a court to stay an action if *Burford* calls for abstention). The Trustee ignores this facet of *Quackenbush*.

At least two of this Court's holdings confirm *Burford's* applicability in actions seeking damages. In *Just Energy*, this Court held *Burford* abstention was required in an adversary proceeding against ERCOT

relating to energy pricing during the Storm. *Just Energy*, 57 F.4th at 254-55. Just Energy sought monetary relief—return of "at least $274 million of the $335 million paid"—via statutory preference-type claims. *Id.* at 254. Additionally, *Wilson v. Valley Electric Membership Corp.* did not involve a request for equitable or discretionary relief but involved customers of electric cooperatives "seeking refunds for rate increases entered without Commission approval." 8 F.3d 311, 313 (5th Cir. 1993). As *Just Energy* and *Wilson* demonstrate, the Trustee's request for monetary relief, ROA.300-06, does not preclude the bankruptcy court from abstaining when the *Burford* factors are met.

Appropriately, *Just Energy* did not direct the bankruptcy court to dismiss any claims; rather, it directed the bankruptcy court to "determine the appropriate trajectory of this case after abstention." *Just Energy*, 57 F.4th at 255.[1] Nor did *Wilson* involve dismissal of any claims. *See Wilson v. Valley Elec. Membership Corp.*, 1992 WL 233769, at *6 (E.D. La. Aug. 24, 1992) (granting motion for abstention), *aff'd*, 8 F.3d 311 (5th Cir.

---

[1] In response to this Court's mandate, the bankruptcy court issued an order that it "has reviewed and is bound by the [*Just Energy*] Opinion and will abstain," and the "adversary proceeding is stayed." Order Staying Adversary Proceeding, *In re Just Energy Group, Inc.*, No. 21-30823 (Bankr. S.D. Tex. Mar. 9, 2023) [Dkt. 261].

1993). ERCOT does not seek dismissal of any of the Trustee's claims on *Burford* grounds; instead, it asks the bankruptcy court to abstain from hearing the Trustee's claims. ROA.382 (requesting that the bankruptcy court "abstain from deciding any claim under … *Burford*"). Both *Quackenbush* and *Just Energy* require abstention.

Finally, the Trustee purports to "preserve[] for potential future review the argument that *Just Energy* was wrongly decided" because *Burford* does not apply in the bankruptcy context. Appellee's Br. 24 n.5. *Just Energy* rejected this argument. *Just Energy*, 57 F.4th at 248-49 ("We need only affirm our precedent establishing that: … *Burford* applies in the bankruptcy context.") (citing *Wilson*, 8 F.3d at 313-16). The Trustee makes no argument that *Just Energy* was wrongly decided, and she has waived any such complaint.

**B.    All five *Burford* factors weigh in favor of abstention.**

### 1.    The Trustee's claims raise significant issues of Texas law.

The Trustee's reliance on the "federal interests" of her claims is not dispositive when evaluating the first *Burford* factor. Factor one does not require the claim facially arise under state law, as the Trustee posits. Instead, the inquiry is whether the underlying issues presented are state

law issues, even if framed under federal law. *Burford*, 319 U.S. at 317 (abstention was warranted when plaintiff claimed a violation of its federal constitutional rights); *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997) (abstention was warranted when plaintiff claimed a federal statutory violation).

The Trustee's claims arise under state law because they require an analysis of whether ERCOT's wholesale electricity prices during the Storm, as well as the PUCT Orders on which the price was based, violated Texas statutes, ERCOT's Protocols, and the SFA. ROA.292-93. Because the Trustee's claims are unquestionably "entangled in a skein of state law," abstention is warranted. *Sierra Club*, 112 F.3d at 795; *see Just Energy*, 57 F.4th at 250-51.

### 2. The Trustee's claims require the bankruptcy court to resolve unsettled issues of Texas law.

The second factor, whether the case involves inquiry into unsettled state law or local facts, turns "on whether the court will be forced to weigh competing local interests and mostly review an agency's decision in an area in which that agency is arguably an expert." *Just Energy*, 57 F.4th at 250. "Section 39.151's grant of extensive authority to the PUC[T] over ERCOT and its detailed regulation of the particulars of ERCOT's

functions constitute a pervasive regulatory scheme" that is highly specialized and commands abstention. *CPS Energy*, 2023 WL 4140460, at *7.

The Trustee describes her claims as "modest claims about the disjuncture between the Protocols and ERCOT's decisions during the storm." Appellee's Br. 25. There is nothing "modest" about the Trustee's allegations. The Trustee's claims implicate state-law questions affecting the relationship between ERCOT and every market participant during the Storm. The Trustee's case is premised on a purported violation of the Protocols[2] and the SFA, ROA.300-09, and resolution of these claims requires an examination of the interplay between the Protocols, the PUCT rules and PUCT Orders, and PURA. Such an examination would significantly implicate the bankruptcy court's review of the very same agency decisions (ERCOT and the PUCT's) that warrant *Burford* abstention. *Just Energy*, 57 F.4th at 254 (noting dispute involved "whether the PUCT fail[ed] to follow the language of its own

---

[2] The Protocols "have the force and effect of statutes," *PUC v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 595 (Tex. App.—Austin 2011, pet. denied), and market participants are statutorily required to obey them on pain of PUCT-imposed administrative penalties, TEX. UTIL. CODE § 39.151(j).

regulations … or whether an affiliated independent organization—i.e., ERCOT—complied with the PUCT's rules and orders" (internal citations omitted)).

None of the SFA and Protocol provisions on which the Trustee's state-law allegations rely have ever been judicially construed. And even if the Supreme Court of Texas grants the petition for review in *Luminant*, the issue of whether the PUCT Orders, and ERCOT's actions under them, violate the SFA and Protocols were not addressed by the court of appeals and would not be before the Supreme Court. *See generally Luminant Energy Co. v. PUCT*, 665 S.W.3d 166 (Tex. App.—Austin 2023, pet. filed).[3]

As in *Just Energy*, the Trustee's claims would require the bankruptcy court to "second guess ERCOT's decision making and authority during the unusual, emergency circumstances of" the Storm. 57 F.4th at 250. "This is precisely the sort of highly localized, specialized,

---

[3] *Luminant* concerns whether the PUCT acted with authority and complied with the APA in promulgating the PUCT Orders. ERCOT's conduct is not at issue in that case. But to the extent the claims in *Luminant* mirror the Trustee's attacks on the PUCT Orders' validity, the fact that the case is already before the Supreme Court of Texas undermines the Trustee's argument that abstention will result in delay.

judgmental, and perhaps partisan analysis" that commands abstention. *Id*. at 250-51 (quoting *Wilson*, 8 F.3d at 315).

### 3.    Texas has a uniquely important interest in the ERCOT market's regulation.

Discussion of the third *Burford* factor is absent from the Trustee's Brief. This is because it is unequivocal that the state of Texas has an important interest in the types of claims at issue here. This Court has concluded Texas has a "paramount" interest in its electricity market. *Id*. at 251-52. And this Court has acknowledged the Supreme Court of Texas has repeatedly recognized Texas's interest in utility regulation and litigation and its protection of the electricity-related public interest. *Id*. at 251 (citing *Oncor Elec. Delivery Co. LLC v. Chaparral Energy, LLC*, 546 S.W.3d 133, 139 (Tex. 2018); *Hearts Bluff Game Ranch, Inc. v. Texas*, 381 S.W.3d 468, 489 (Tex. 2012); *In re Entergy Corp.*, 142 S.W.3d 316, 323 (Tex. 2004)). With the state interest so strong, *Burford* abstention is warranted.

### 4.    Texas's grid and energy market require unified management and coherent policy.

Contrary to the Trustee's assertions, this proceeding presents the exact type of "worrisome meddling" in the state regulatory scheme that

*Burford* is designed to foreclose. Appellee's Br. 25. "[C]entral to this case is the type of complex state administrative processes that *Burford* abstention aims to protect from undue federal interference, namely, Texas's wholesale electricity market." *Just Energy*, 57 F.4th at 252 (internal citations and quotations omitted). As in *Just Energy*, the Trustee's desired outcome "jeopardizes Texas's pervasive administrative electricity scheme." *Id.* at 253. And the Supreme Court of Texas has recently held—in a case concerning claims almost identical to the Trustee's—that when claims "implicate ERCOT's operations and billing, [they] fall under the PUC[T]'s 'complete authority.'" *CPS Energy*, 2023 WL 4140460, at *8.

The Trustee argues "reduc[ing] Entrust's debt obligation to the proper level" is not analogous to "extract[ing] money back from ERCOT." Appellee's Br. 26. The Trustee's argument ignores the reality of how Texas's electricity market functions. As in *Just Energy*, if Entrust "escapes its payment obligations, all other market participants will necessarily be affected … as they would financially bear the burden of an order in favor of [Entrust]." *See Just Energy*, 57 F.4th at 253. This is because ERCOT must "remain revenue neutral." *Id*. As such, "reduc[ing]

Entrust's debt obligation," Appellee's Br. 26, would require ERCOT to shift payment obligations to all other market participants, resulting in a "domino effect [that] is exactly the type of 'worrisome' federal court interference with an interdependent administrative scheme that *Burford* seeks to prevent." *Just Energy*, 57 F.4th at 253.

Accordingly, the potential disruption of Texas's regulatory electricity market warrants *Burford* abstention.

### 5. Texas has established centralized, exclusive fora for judicial review.

The Trustee admits "state law does make alternative forums available" for the claims she raises. Appellee's Br. 26. Challenges to PUCT regulatory actions must be brought only in administrative proceedings before the PUCT, Travis County district court, or the Third Court of Appeals in Austin. TEX. GOV'T CODE §§ 2001.038(b), 2001.176(b)(1); TEX. UTIL. CODE §§ 11.007(a), 15.001, 39.001(e); *see Just Energy*, 57 F.4th at 254. The Trustee's challenges to the PUCT and ERCOT's pricing decisions come within "the jurisdictional scope of the PUC[T]'s exclusive jurisdiction." *CPS Energy*, 2023 WL 4140460, at *8. A PUCT decision does not foreclose a party "from seeking judicial review of any PUC[T] rulings on issues underlying those claims." *Id.* at *9. As a

result, the existence of a special state forum for judicial review justifies abstention. *Just Energy*, 57 F.4th at 254.

***

In *Just Energy*, four of the five factors favored abstention, and this Court found "the bankruptcy court abused its discretion in declining to abstain." *Id.* at 255. Here, because all five factors are "lopsided in favor of abstention," abstention is warranted. *Id.* at 254.

## II.    The filed rate doctrine bars the Trustee's claims.

### A.    The Trustee's claims strike at the core of the filed rate doctrine.

The Trustee's central contention is that ERCOT's $9,000/MWh energy price during the Storm was illegal, excessively high, and not permitted by the "vague[]" PUCT Orders, ROA.291 ("The February 15 PUCT Order did not direct ERCOT to set prices at $9,000/MWh, nor did it instruct ERCOT to make any specific changes to its Protocols … [and it] did not give ERCOT self-executing authority to set prices at the HCAP level"), or the Protocols, ROA.295 ("ERCOT unlawfully breached its Protocols when it passed along these improperly high costs to market participants."). Based on this theory, the Trustee seeks a judicial

determination of a different fair value of the rate charged Entrust. ROA.300-01, 304-06, 308.

This Court's precedent—in a case involving ERCOT electricity rates—could not be clearer: the filed rate doctrine "bars judicial recourse against a regulated entity based upon allegations that the entity's 'filed rate' is too high, unfair or unlawful." *TCE*, 413 F.3d at 507. The Trustee cannot evade that principle.

The Trustee insists she does not seek to avoid the filed rate but rather seeks to enforce it. Appellee's Br. 27. The Trustee claims the rate that would have prevailed under the Protocols *absent* the PUCT Orders constitutes the filed rate, and ERCOT "misapplied" the filed rate in following the directive of the PUCT. *Id.* at 28. The Trustee explains that because ERCOT contradicted *the Protocols*—"the basis of [ERCOT's] market rates as regulated by the PUCT and thus its filed rates"—ERCOT did not charge a filed rate. *Id.* at 29. This attempt to remake facts misunderstands the very principle underlying the filed rate doctrine.

The Trustee acknowledges ERCOT set the $9,000/MWh price in response to the PUCT Orders directing that the price of energy be set at its maximum. *Id.* at 7. The $9,000/MWh price about which the Trustee

complains was directed by the PUCT when it issued the Orders. *See id.* at n.4 (citing *Luminant*, 665 S.W.3d at 187). The Trustee challenges ERCOT's application of the PUCT Orders and claims ERCOT violated its own Protocols by obeying the PUCT. ROA.292-93, 301. This kind of challenge to the lawfulness of the regulator's ratemaking lies at the heart of the filed rate doctrine. *Rothstein v. Balboa Ins. Co.*, 794 F.3d 256, 261 (2d Cir. 2015) (noting the two principles underlying the filed rate doctrine: nonjusticiability and nondiscrimination).

Even if it had not been ordered by the PUCT, the $9,000/MWh price would remain a filed rate. *TCE*, 413 F.3d at 510. *TCE*'s reasoning in holding ERCOT rates are filed rates was premised on the PUCT's duty "to ensure 'safe, reliable, and reasonably priced electricity.'" *Id.* at 509 (citing TEX. UTIL. CODE §§ 39.101(a)(1), 35.004(e)). The "PUCT's oversight over the market," *id.* at 510, is broader than the PUCT's indirect input to the Protocols—as evidenced by the fact that the PUCT can (and in this case did) direct the price of electricity. 16 TEX. ADMIN. CODE § 25.501(a) (PUCT has authority to "otherwise direct[]" market prices). The Trustee's theory that the Protocols constitute the filed rate is inconsistent with this Court's precedent and PURA.

The Trustee argues alternatively even if the filed rate doctrine applies generally, it does not apply to the rates charged during the final 33 hours of the Storm. Appellee's Br. 32. The Trustee claims ERCOT improperly maintained the $9,000/MWh pricing during that time because any directive by the PUCT no longer applied. *See id.*[4] But the ERCOT market rates are filed rates not because the PUCT sets them (it generally does not), but because they are at all times subject to PUCT *oversight. See TCE*, 413 F.3d at 509-10. The price charged during the 33-hour period at issue was set by ERCOT using authority delegated from the PUCT and subject to PUCT oversight—just as it was in the preceding approximately 50 hours. TEX. UTIL. CODE §§ 39.151(d), (i); 16 TEX. ADMIN. CODE § 25.501(a).

The Trustee cites a laundry list of nonbinding case law purportedly permitting courts to entertain challenges to a misapplied rate. Appellee's Br. 28 n.6. These cases are unhelpful because they were either decided before or fail to account for *TCE*,[5] or they are distinguishable from the

---

[4] Just Energy also made this 33-hours argument. *Just Energy*, 57 F.4th at 246-47.

[5] *Occidental Chem. Corp. v. La. Pub. Serv. Comm'n*, 494 F. Supp. 2d 401, 417 (M.D. La. 2007); *Drew v. MCI WorldCom Mgmt. Co., Inc.*, No. 3:99-cv-1355, 1999 WL 1087470, at *1 (N.D. Tex. Dec. 1, 1999).

case at hand.[6] *Occidental*, though decided after *TCE*, fails to acknowledge it. *See generally* 494 F. Supp. 2d at 417. This is detrimental because *TCE* involved similar allegations as *Occidental* and compelled dismissal. *Id.* (finding filed rate doctrine inapplicable to claims the defendants, including the regulator, the Louisiana Public Service Commission, "engaged in a 'subterfuge' to 'intentionally and maliciously'" generate an improper rate without acknowledging *TCE* and that it involved similar allegations). *Drew* was decided not only before *TCE*, but also before *Twombly* and *Iqbal*. 1999 WL 1087470, at *1. Therefore, neither case is persuasive where ERCOT seeks dismissal under the filed rate doctrine based on *TCE*.

*Brown*, is inapplicable because it involved rates charged, contrary to a tariff, in error. 277 F.3d at 1169. Nor is *Randleman* helpful for the Trustee, as the plaintiff sought application of a discounted rate as part of a schedule of rates in a tariff—*all of which* were filed. 465 F. Supp. 2d at 823. And *North Valley Communications* is irrelevant because it involved

---

[6] *Brown v. MCI WorldCom Network Servs., Inc.*, 277 F.3d 1166, 1169 (9th Cir. 2002); *Randleman v. Fid. Nat. Title Ins. Co.*, 465 F. Supp. 2d 812, 823 (N.D. Ohio 2006); *N. Valley Commc'ns, LLC v. MCI Commc'ns Servs., Inc.*, Nos. CIV. 07-1016, CIV. 07-4106, 2008 WL 2627519, at *1 (D.S.D. June 26, 2008).

a scheme that resulted "in the provision of services *not covered*" by the relevant tariff. 2008 WL 2627519, at *3 (emphasis added). As explained, the rates at issue were not charged in error; the alternative rate the Trustee seeks is *not* a filed rate; and ERCOT's pricing of electricity during the Storm is unquestionably subject to the filed rate doctrine. *TCE*, 413 F.3d at 509-10.

Finally, the Trustee notes the Independent Market Monitor ("IMM") "decried" the $9,000/MWh price as inappropriate. Appellee's Br. 32. This is irrelevant (and inaccurate). The Trustee contends the IMM is "the regulator." *Id.* It is not. Rather, the IMM monitors wholesale market activities to detect and prevent market manipulation and abuses, evaluate the operations of the market, and propose changes to market rules. 16 TEX. ADMIN. CODE § 25.365(c). By PUCT rule, it "*has no enforcement authority.*" *Id.* § 25.365(e)(1) (emphasis added). The IMM's disagreement with the rate charged during the Storm has no legal effect under either state or federal law and is not relevant to whether the rate is a filed rate. Even so, the IMM *did not* disagree with the rate charged during the first 50 hours of the Storm. *See* PUC Control No. 51812, Item

No. 149.[7] Rather, the IMM, in large part, agreed with the very rate the Trustee is challenging. *See id.*

## B. Post hoc calculation of what the rate might have been under different circumstances is not within the bankruptcy court's province.

The Trustee makes the disingenuous suggestion that "determining the proper rate is a simple task" the bankruptcy court could complete; thus, it would not invade the PUCT's domain for the bankruptcy court to do so. Appellee's Br. 35. To the contrary, the clearing price of electricity in the ERCOT market is generally derived from multiple variables, including offers into the market across the state at minute intervals. To retrospectively determine the clearing price of energy during the Storm would therefore be impossible. In any event, the Supreme Court of Texas says it *would* invade the province of the PUCT, the entity with the proper expertise, for another tribunal to redetermine a rate. Both ERCOT's operations and billing and whether it properly implements its Protocols come within the exclusive jurisdiction of the PUCT. *CPS Energy*, 2023 WL 4140460, at *8.

---

[7] *Available at*
https://interchange.puc.texas.gov/Documents/51812_149_1115720.PDF.

Even if post hoc application of the Protocols' complex formula for calculating energy rates was within the province of the bankruptcy court (and this Court has said it is not, *Just Energy*, 57 F.4th at 254), the filed rate doctrine prevents such an exercise. Indeed, *TCE* holds any such task is reserved for the relevant regulatory agency and "not the courts." 413 F.3d at 508; *see also CPS Energy*, 2023 WL 4140460, at *8 (noting ERCOT's operations and billing fall within the PUCT's complete authority).

The Trustee states she "seeks only to have ERCOT's true filed rates be applied to the debtors." *Id.* This statement alone establishes the Trustee's claim objection violates the filed rate doctrine. *Wegoland Ltd. v. NYNEX Corp.*, 27 F.3d 17, 21 (2d Cir. 1994) ("[A]pplication of the filed rate doctrine prevents discrimination in rates paid by customers because victorious plaintiffs would wind up paying less than non-suing ratepayers.").

The bankruptcy court erred in failing to dismiss the Complaint under the filed rate doctrine.

### III. The bankruptcy court erred in failing to dismiss the Complaint under Rule 12(b)(7) for failure to join the indispensable PUCT.

#### A. The PUCT is a necessary party.

##### 1. No matter how she attempts to reframe her claims, the relief the Trustee seeks implicates the PUCT.

The Trustee argues the PUCT is not indispensable because the PUCT has no interest in this proceeding. Appellee's Br. 37. But under the APA, the agency must be a party to any action challenging the applicability of its orders. TEX. GOV'T CODE § 2001.038(c). Although the Trustee does not dispute Texas law provides the PUCT must be a party to a challenge to the validity or applicability of its orders, she claims the Complaint "in no way questions the validity or applicability of the PUCT's orders." Appellee's Br. 37. But the Trustee "attacks ERCOT's *interpretation* of those orders, which read into them a nonexistent directive to peg market prices for electricity at the maximum rate for several days." *Id.* (emphasis in original). *Contra Luminant*, 665 S.W.3d at 188 (interpreting the Orders "to require—quite expressly—that ERCOT take steps necessary to ensure that energy prices would clear at $9,000 during the duration of the EEA3 event"); Appellee's Br. 8 n.4 ("The Court of Appeals of Texas disagreed with the PUCT that its orders were

not directives to ERCOT to increase prices.") (citing *Luminant*, 665 S.W.3d at 187).

The Trustee's argument fails because under Texas law, an action involving the interpretation or construction of an agency action falls within the APA's declaratory judgment provision. *Tex. State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 708 (Tex. App.—Austin 2013, no pet.) (noting a claim "concern[ing] the proper construction of the Board's rules" falls within the APA); *Rivera v. Sonnenschein*, No. 03-21-00516-CV, 2022 WL 1751685, at *6 (Tex. App.—Austin June 1, 2022, pet. denied) ("[T]he gravamen underlying Sonnenschein's third requested declaration is that the Board Members have allegedly misconstrued or misapplied the Rules, a type of challenge that must be brought against the Board.") (citing TEX. GOV'T CODE § 2001.038(c)); *Tex. Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 746-47 (Tex. App.—Austin 2014, pet. dismissed) (plaintiff's claims requiring "construction" of agency rule under UDJA was "redundant" of APA claims seeking same relief).

Contrary to her assertions otherwise, the Trustee's Complaint *does* challenge the validity and applicability of the Orders. First, a challenge

to "ERCOT's interpretation" of the PUCT Orders is the same as a challenge to their applicability. The Trustee alleges the PUCT Orders "failed to accomplish" ERCOT's purported goal of seeking "legal cover" to peg the energy price at $9,000/MWh because they did not actually direct ERCOT to do so. ROA.291; *see also* ROA.293 ("This unauthorized change was not permitted by the February 15 PUCT Order or the Protocols"); *id.* ("ERCOT's unauthorized change to the [RDPA] was already a departure from the plain language of the February PUCT Orders."). In other words, the Trustee alleges ERCOT misapplied the Orders—that ERCOT read them as applying in a certain manner when, as the Trustee reads them, they did not. To suggest this is not an argument about the applicability of the PUCT Orders defies logic.[8]

Second, the Trustee attacks the validity of the PUCT Orders. *E.g.*, ROA.292. By asserting ERCOT violated the SFA and Protocols by complying with the PUCT Orders, the Trustee attempts to render the PUCT Orders ineffective—thus eliminating the PUCT's power to "otherwise direct[]" the price of electricity in the ERCOT market. 16 TEX.

---

[8] The Trustee's claim that ERCOT also violated the PUCT Orders by holding them in place too long, ROA.294, also challenges the PUCT Orders' *applicability* during that period of time.

ADMIN. CODE § 25.501(a). But the Trustee does not stop there: she claims the PUCT Orders were "vague," included "nonsensical purported findings," and "overlooked" that load shed was not a scarcity pricing trigger. ROA.292. The Trustee thus attacks the validity of the PUCT Orders.

Because the Complaint challenges the validity and applicability of the PUCT Orders, the bankruptcy court erred in failing to dismiss the Complaint under Rule 12(b)(7).

### 2. The Trustee's claims threaten to leave ERCOT subject to multiple inconsistent obligations.

The Trustee argues her claims will not result in multiple inconsistent obligations for ERCOT because her claims are premised on the notion that ERCOT acted inconsistently with the PUCT Orders, and a judgment in the Trustee's favor would cure that inconsistency rather than create one. Appellee's Br. 38. This argument misses the point.

The Trustee does not dispute there are pending state court actions to which the PUCT is a party that concern the PUCT Orders and their effect. *See id.* And the Trustee does not appear to dispute ERCOT is subject to the PUCT's authority and must follow its orders. *See* ROA.291 (conceding the PUCT Orders *could have* provided ERCOT "legal cover to

peg prices at the HCAP level" had the "actual language of the" Orders not "failed to accomplish that goal."). Because ERCOT is bound by the PUCT Orders, it is also bound by the interpretation of those Orders by courts of competent jurisdiction. Thus, it does not matter that ERCOT is not a party to the state court actions.

Should the bankruptcy court agree with the Trustee as to the interpretation of the PUCT Orders, that ruling would not only be inconsistent with the PUCT Orders (which the PUCT, in declining to reprice the market following the Storm, has indicated ERCOT interpreted *correctly*), but also risks inconsistency with judgments of the state courts considering the same issue. *See Just Energy*, 57 F.4th 251 (second guessing ERCOT's decision-making during the Storm "risk[s] reaching a different answer than the state institutions with greater interest in and familiarity with such matters") (quoting *Sierra Club*, 112 F.3d at 796). ERCOT would be left unable to "comply with one court's order without breaching the order of another court that pertains to the

same incident." *Broad. Music, Inc. v. Armstrong*, No. EP–13–CV–0032–KC, 2013 WL 3874082, at *7 (W.D. Tex. July 24, 2013).[9]

Finally, *CPS Energy* explains why the PUCT is a necessary party to this proceeding. CPS Energy claimed, among other things, ERCOT made a "$16 billion error" in maintaining the $9,000/MWh pricing during the final 33 hours of the Storm and sued ERCOT for failing to correct this error. *CPS Energy*, 2023 WL 4140460, at *8. But the Supreme Court of Texas held this issue involves "the very activities the PUC[T] regulates." *Id.* (internal quotation marks omitted and alterations incorporated). Indeed, the PUCT "is responsible for ensuring that ERCOT adequately performs its functions and duties," which indisputably include complying with the directives of the PUCT. *Id.* (internal quotation marks omitted and alterations incorporated). Accordingly, the issues before the court in *CPS Energy* fell within the PUCT's exclusive jurisdiction. *See id.*

The bankruptcy court erred in concluding the PUCT is not a necessary party.

---

[9] Though ERCOT meets the standard for inconsistency the Trustee advances—that it will be unable to comply with one court's order without breaching another court's order, Appellee's Br. 38—the standard is not as narrow as the Trustee claims. Rather, the standard for inconsistency "is not limited to circumstances that may require two inconsistent dispositions" but focuses instead on "inconsistent *liability*." *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1312 (5th Cir. 1986) (emphasis added).

## B.    The PUCT cannot be joined.

This Court's precedent is clear: a necessary party's sovereign immunity is "enough to require dismissal of the action because 'there is a potential for injury to' the [entity's] 'interests as the absent sovereign.'" *Lee*, 47 F.4th at 268 (citing *Republic of Philippines v. Pimentel*, 553 U.S. 851, 867 (2008)). In reaching this holding, *Lee* noted other circuits employ the same rule. *Id.*

The Trustee mischaracterizes *Lee* by suggesting the Court equivocated in or otherwise limited this holding. *See* Appellee's Br. 40 (stating *Lee* "remark[ed] that a party's enjoyment of sovereign immunity may sometimes leave very little room for balancing of other factors set out in Rule 19(b)" (quotations omitted)).[10] The Trustee does not dispute (nor can she) the PUCT enjoys sovereign immunity. *See id.* The PUCT's immunity ends the Rule 19 inquiry. *Lee*, 47 F.4th at 268 (holding necessary party's immunity from suit was "enough to require dismissal").

The Trustee's analysis of the Rule 19(b) factors also falls short. She first asserts there is no risk that a judgment in this case would prejudice

---

[10] The Trustee makes much of the fact that the Court in *Lee* went on to analyze the Rule 19(b) factors despite holding dismissal was proper without regard to the factors. Appellee's Br. 40. This analysis does not compel courts to consider the Rule 19(b) factors when an immune entity is a necessary party.

the PUCT or ERCOT, relying on her arguments that the PUCT has no interest in the proceeding and that ERCOT will not be subject to multiple inconsistent obligations. Appellee's Br. 40. As explained above, the PUCT's interest is paramount in this proceeding where construction of its orders is the primary issue. And the bankruptcy court's construction of the PUCT Orders *does* threaten exposing ERCOT to multiple inconsistent obligations because other courts are presently reviewing the same Orders.

Second, the Trustee posits that the bankruptcy court could shape relief to protect the PUCT's interests by limiting its ruling only to ERCOT. *Id.* But the Trustee suggests no manner by which this could be accomplished other than "grant[ing] the relief the Trustee has requested." *Id.* at 41. Granting the relief the Trustee requests "necessarily affects all market participants" because ERCOT would have to allocate Entrust's shortfall "to other market participants" by "recoup[ing]" those funds from them "to remain revenue neutral and to ensure that energy-generating participants were paid." *Just Energy*, 57 F.4th at 253.

Third, the Trustee claims "a correction to the amount asserted in ERCOT's proofs of claim to reflect the market rates according to ERCOT's protocols" can be accomplished without the PUCT. Appellee's Br. 41. But any judgment excluding the PUCT will leave open the question of the market-wide effect of the PUCT Orders as well as any contrary state-court judgment that binds the PUCT. Thus, any judgment absent the PUCT would be inadequate.

Finally, the Trustee asserts she would have no remedy if her claims were dismissed under Rule 19. *Id.* As explained in Section I.B.5, *supra*, the Trustee may challenge both the PUCT Orders and ERCOT's conduct in response to those Orders pursuant to Texas's statutory framework. *See Just Energy*, 57 F.4th at 254; *CPS Energy*, 2023 WL 4140460, at *8.

The PUCT cannot be joined because it is immune from suit, and the Rule 19(b) factors counsel against proceeding in the PUCT's absence in any event. The bankruptcy court erred in failing to dismiss the Complaint under Rule 19. *See Just Energy*, 57 F.4th at 254 (finding "Texas law mandates" that "challenge[s] to ERCOT's pricing decisions and invoices" must be brought pursuant to Texas's statutory framework and not in bankruptcy court); *CPS Energy*, 2023 WL 4140460, at *8 (finding that

the PUCT has exclusive jurisdiction to adjudicate claims that ERCOT made an error in charging $9,000/MWh on Storm-related invoices).

## IV.   ERCOT is immune from the Trustee's tort claim.

### A.   The State of Texas considers ERCOT immune, and the Sovereign's decision should be dispositive.

ERCOT asserts it is immune from the Trustee's *state-law* tort claim. Recently, the Supreme Court of Texas held ERCOT is entitled to sovereign immunity under state law. *CPS Energy*, 2023 WL 4140460, at *15. That holding should settle the question of ERCOT's immunity. *See Just Energy*, 57 F.4th at 251 n.8 (observing that whether ERCOT "is entitled to immunity" was then an "unsettled state-law matter[]").

The Supreme Court of Texas's state-law immunity analysis comports with this Court's analysis of Eleventh Amendment immunity, which ERCOT also possesses. That immunity extends to "arms of the state, entities which are effectively the state itself because 'the state is the real, substantial party in interest.'" *Springboards to Educ., Inc. v. McAllen Indep. Sch. Dist.*, 62 F.4th 174, 178 (5th Cir. 2023). And ERCOT is "an arm of the state." *CPS Energy*, 2023 WL 4140460, at *15. The *Clark* factors only obscure this reality, as this Court has called them "imprecis[e]" and "puzzling" with "'all the precision of a blunderbuss.'" *Id.*

at 178-79 (quoting *Cutrer v. Tarrant Cnty. Loc. Workforce Dev. Bd.,* 943 F.3d 265, 270 (5th Cir. 2019)). Here, the Court need look no further than *CPS Energy.*

At the ratification of the Constitution, having left "to the several states, a residuary and inviolable sovereignty," the Founders left sovereign immunity to the states. The Federalist No. 39 (James Madison) (C. Rossiter ed. 1961); The Federalist No. 81 (Alexander Hamilton) (C. Rossiter ed. 1961). Sovereignty is part of "the general sense, and the general practice of mankind," and the Constitution therefore left it "with the States" unless they had "surrender[ed]" some portion "of this immunity in the plan of the convention." The Federalist No. 81; *see also Alden v. Maine*, 527 U.S. 706, 755 (1999).

For more than a century, federal courts have looked to a state's highest court for guidance in discerning the scope of that state's sovereign immunity, particularly with regard to quasi-State entities. *Lincoln Cnty. v. Luning*, 133 U.S. 529, 530 (1890) (relying on the Nevada Supreme Court's interpretation and application of the state constitution to find a county liable and deny it immunity as part of the State); *Broward Cnty. Fl. v. Wickman,* 195 F.2d 614, 615 (5th Cir. 1952) (relying on the Florida

Supreme Court and holding that a county, under Florida law, is immune from process and shares the State's immunity). At the founding, as it is now, the question of *who* is the State and ultimately *who* enjoys immunity is inherently suited for the State itself to answer. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977) (whether entity was an arm of state requires looking "to the nature of the entity created by state law"); *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 429, 432 n.5 (1997) (meaning within the Eleventh Amendment is a "federal question [that] can be answered only after considering the provisions of state law that define the agency's character"). Accordingly, courts are instructed to implement "the law in a manner consistent with the *constitutional sovereignty* of the States" when immunity is asserted. *Alden*, 527 U.S. at 732 (emphasis added).

Because ERCOT has sovereign immunity under state law, *see CPS Energy*, 2023 WL 4140460, at *15, this Court should extend Eleventh Amendment immunity to it as well.

### B. ERCOT has Eleventh Amendment immunity under the *Clark* factors.

An analysis of the *Clark* factors also supports a finding that ERCOT is immune. *See Clark v. Tarrant Cnty.*, 798 F.2d 736 (5th Cir. 1986). The

Trustee's contrary arguments lean heavily on *Panda Power Generation Infrastructure Fund, LLC v. ERCOT, Inc.*, 641 S.W.3d 893 (Tex. App.— Dallas 2022), *rev'd sub nom., CPS Energy*, 2023 WL 4140460. Appellee's Br. 42. But the Supreme Court of Texas recently reversed the findings in *Panda*, holding ERCOT is an "arm of the state" and therefore entitled to sovereign immunity. *CPS Energy*, 2023 WL 4140460, at *15.

### 1. View of courts and statutes

"ERCOT enjoys sovereign immunity as an arm of the state." *Id*. As the Supreme Court of Texas held, ERCOT's immunity is not "derivative of the state" but exists because ERCOT has the nature, purposes, and powers of a state agency. *Id*. at *12. Additionally, ERCOT is a "governmental unit" under Texas law because it is an organ of government that derives its status and authority from state law and performs a "uniquely governmental function as part of a larger governmental system." *Id*. at *6 (internal quotation marks omitted).

The Trustee attempts to minimize *CPS Energy* by citing to *Springboards*, where this Court denied Eleventh Amendment immunity to a charter school despite the Supreme Court of Texas's holding that charter schools are generally arms of the state. Appellee's Suppl. Br. 4-5.

But the Trustee ignores that the Court found the Supreme Court of Texas's decision on sovereign status of charter schools—*El Paso Educ. Initiative, Inc. v. Amex Props., LLC*, 602 S.W.3d 521 (Tex. 2020)—weighed *in favor* of immunity. *Springboards*, 62 F.4th at 179. Indeed, *Springboards* denied immunity to the charter school at issue because four of the remaining *Clark* factors were not satisfied with respect to the school. *See id.* at 181-82. *Springboards* is instructive as it relates to the first *Clark* factor, but because ERCOT satisfies all other *Clark* factors, *Springboards* does not support the Trustee's position.

Moreover, contrary to the Trustee's contention that nothing in PURA suggests ERCOT is an arm of the state, Appellee's Br. 46, PURA "demonstrates legislative intent to grant ERCOT the nature, purposes, and powers' of an arm of the State government." *CPS Energy*, 2023 WL 4140460, at *11 (quotations omitted). PURA grants ERCOT, a certified ISO, delegated authority to supervise the Texas power region's transmission facilities and to coordinate its market transactions, transmissions planning, and network reliability. *Id.* at *5; TEX. UTIL. CODE § 39.151(d). This specific utility regulation is "uniquely governmental." *CPS Energy*, 2023 WL 4140460, at *5.

The Trustee attempts to compare ERCOT to entities that are not considered state agencies. Appellee's Br. 48. Unlike ERCOT, the Sabine River Authority has financial independence and considerable management authority by statute. *Bonin v. Sabine River Auth.,* 65 F.4th 249, 257 (5th Cir. 2023). And the funds the Boll Weevil Eradication Foundation collects are expressly not "state funds." *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454, 470 (Tex. 1997). By contrast, the State exercises "ultimate authority over ERCOT's operations, budget, governance, and property": ERCOT operates "under the direct control and oversight of the PUC[T]" using "public funds … collected pursuant to state power," and the PUCT also has "complete authority over ERCOT's finances and budget." *CPS*, 2023 WL 4140460, at *11-12, 14. And, unlike the Sabine River Authority and the Boll Weevil Eradication Foundation, ERCOT is statutorily defined as a "state agency" for purposes of Chapter 325 of the Government Code. TEX. GOV'T CODE § 325.002(1); TEX. UTIL. CODE § 39.151(n); *see CPS Energy*, 2023 WL 4140460, at *11 (holding that ERCOT "is much like a state agency").

### 2. Source of funding

The Trustee argues a judgment against ERCOT would not have any impact on the state fisc, and therefore, ERCOT is not immune. Appellee's Br. 46. The Supreme Court of Texas—relying on provisions in the Texas Utilities Code—found otherwise. *CPS Energy*, 2023 WL 4140460, at *14; TEX. UTIL. CODE § 39.151.

The Trustee puts too much weight on *CPS Energy*'s acknowledgement that "ERCOT is not funded with tax dollars." *CPS Energy*, 2023 WL 4140460, at *14; Appellee's Suppl. Br. 5. ERCOT is nevertheless funded directly by the State using state funds: The Legislature created a regulatory fee that "is statutorily authorized, subject to PUC[T] approval, and *collected pursuant to state power*." *CPS Energy*, 2023 WL 4140460, at *14 (emphasis added); TEX. UTIL. CODE § 39.151(c). Accordingly, it is *the State* that would pay any judgment against ERCOT—the ultimate inquiry under this *Clark* factor. *Springboards*, 62 F.4th at 179-80. As *CPS Energy* held, "any damages payments would nevertheless come *from the state* and the public." 2023 WL 4140460, at *14 (emphasis added). And that the PUCT may decertify ERCOT at any time and take all its assets demonstrates "the state's

control and *ownership* of ERCOT's property." *Id.* at *13 (emphasis added). ERCOT is therefore unlike the charter school in *Springboards*, which received both local and federal funding mitigating Texas's responsibility for a judgment, 62 F.4th at 180, ERCOT's assets—which are state assets—would be used to pay a judgment. *CPS Energy*, 2023 WL 4140460, at *14.

The State "consider[s] ERCOT's money and assets to be state assets," and ERCOT's immunity therefore results in the "protection of public funds." *Id.* at *14. The source of funding—a statutorily created fee that uses state power to collect state money—therefore militates in favor of immunity. *See* TEX. UTIL. CODE § 39.151(e).

### 3.    Lack of local autonomy

The Trustee acknowledges the PUCT must approve any rules adopted by ERCOT under the PUCT's delegated authority, its bylaws, and its process for adopting or revising the Protocols. Appellee's Br. 50. Although the Trustee argues state statutory authority, among other sources, underscore ERCOT's independence, the Trustee fails to acknowledge that the PUCT's "complete authority" over ERCOT's operations, finances, budget, governance, and discipline is prescribed by

statute. TEX. UTIL. CODE §§ 39.151(d), (d-1), (e), (g); *see CPS Energy*, 2023 WL 4140460, at *13-14. *CPS Energy* found the PUCT's authority over ERCOT is not solely regulatory but also adjudicatory. *CPS Energy*, 2023 WL 4140460, at *5, 7.

*CPS Energy* also rejects the Trustee's argument that it is "a leap too far" to deem the State to be in control of ERCOT's board. In fact, "the state controls" ERCOT's board via a committee whose members are "appointed by the three highest ranking officials in state government," and "the board also includes two state officials" (soon to be three). *Id.* at *11 & n.133. The Supreme Court of Texas distinguished ERCOT from a "typical corporation" that is "manage[d] by a board of directors" because "the state has authority over both ERCOT's board and its bylaws." *Id.* at *13; *see also* TEX. UTIL. CODE §§ 39.151(g)-(g-1).

ERCOT has no autonomy from the State, a fact that points in favor of its immunity. *CPS Energy*, 2023 WL 4140460, at *13 (holding that "ERCOT may not exercise any of [its] corporate powers independently of the state").

#### 4. The State's control over ERCOT's property

Despite the Trustee's focus on ERCOT's *right* to hold and use property, ERCOT's assets are owned by the State. *Id.*; *see also* TEX. UTIL. CODE §§ 39.151(e), (j). The State asserts a direct interest in, freely uses, and directly manages ERCOT's property, which must be "transfer[red] … to the successor organization" if ERCOT is ever decertified. *CPS Energy*, 2023 WL 4140460, at *14; TEX. UTIL. CODE §§ 39.151(d), (d-1), (e). ERCOT's property is thus "property of the state," and ERCOT "does not exclusively manage" it. *See Daniel v. Univ. of Tex. Sw. Med. Ctr.*, 960 F.3d 253, 260 (5th Cir. 2020) (finding fourth *Clark* factor supported that university hospital was an arm of the state because the hospital did not exclusively manage its own property).

#### 5. Ability to sue and be sued

Although ERCOT may sue and be sued, the Trustee does not dispute Texas law permits (and often requires) agencies to sue and be sued in their own names. *See* Appellee's Br. 51.

For the same reasons that the Supreme Court of Texas recently confirmed ERCOT is an organ of government and entitled to sovereign

immunity, the *Clark* factors weigh in favor of finding ERCOT is an arm of the state and thus entitled to sovereign immunity in federal courts.

## C.  ERCOT has not waived its immunity with respect to the Trustee's tort claim.

The Trustee argues ERCOT waived its sovereign immunity with respect to the Trustee's gross negligence claim by filing its proof of claim. Appellee's Br. 52. This Court's interpretation of § 106(b) shows otherwise.

### 1.  The Trustee's tort claim is not a compulsory counterclaim to ERCOT's proof of claim.

Section 106(b) states:

> A governmental unit that has filed a proof of claim is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose.

11 U.S.C. § 106(b). To establish waiver, the Trustee's negligence claim must (1) arise out of the same transaction or occurrence as ERCOT's proof of claim, and (2) be property of the estate. *In re Supreme Beef Processors, Inc.*, 391 F.3d 629, 633-34 (5th Cir. 2004), *on reh'g en banc*, 468 F.3d 248 (5th Cir. 2006). The Trustee has failed to establish both requirements.

This Court analyzed this very issue in *Supreme Beef* where the debtor asserted a counterclaim under the Federal Tort Claims Act

47

against a federal agency that had filed a proof of claim against the estate for overtime inspection services. *Id.* This Court found the debtor's tort claims did not arise out of the "same transaction or occurrence" as the federal agency's proof of claim. *Id.* at 635. Reconsidering *Supreme Beef* en banc, this Court found the district court's ruling dispositive—as did the panel—because the federal agency's "claims for overtime and certification services covered *entirely different periods of time* than the Salmonella HACCP tests at the company plant, [the debtor's] claims based on the latter events do not arise out of the same transactions or occurrences as those that underlie [the federal agency's] claims." *In re Supreme Beef Processors, Inc.*, 468 F.3d 248, 253 n.5 (5th Cir. 2006) (en banc) (emphasis added).

Because § 106(b) employs the same "transaction or occurrence" language as Federal Rule of Civil Procedure 13(a), this Court applies the same test as it does for determining joinder of compulsory counterclaims. *Supreme Beef Processors*, 391 F.3d at 633-34. The "logical relationship" test determines whether a claim and counterclaim arise from the same transaction or occurrence—that is, whether they share an aggregate of operative facts. *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 881 (5th Cir.

1998) (citing *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 303-04 (5th Cir. 1993).

In determining whether a claim is a compulsory counterclaim, this Court asks whether: (1) the issues of fact and law raised by the claim and counterclaim largely are the same; (2) res judicata would bar a subsequent suit on defendant's claim; (3) substantially the same evidence will support or refute plaintiff's claim as well as defendant's counterclaim; and (4) there is any logical relationship between the claim and counterclaim. *Id.* None of these factors are met.

First, the Trustee's gross negligence claim arises out of different facts and law than ERCOT's proof of claim. The two claims derive from different areas of the law: contract (ERCOT's proof of claim), *In re Entrust Energy, Inc.*, No. 21-31070, Claims 107, 108 (Bankr. S.D. Tex. Aug. 10, 2021); and tort (the Trustee's gross negligence claim), ROA.307-08. Courts enforce the boundary between tort and contract. *Golden Spread Elec. Coop. v. Emerson Process Mgmt. Power & Water Sols., Inc.*, 954 F.3d 804, 808 (5th Cir. 2020). Treating the Trustee's gross negligence claim as a compulsory counterclaim would tear down the "wall" between the two areas of law. ERCOT's proof of claim is a claim for money under the SFA,

whereas the Trustee's gross negligence claim involves ERCOT's allegedly extracontractual actions.

Second, the adjudication of ERCOT's claim would not bar the Trustee's gross negligence claim in the future. Res judicata requires the same claim or cause of action be involved in both proceedings. *Vines v. Univ. of La. at Monroe*, 398 F.3d 700, 709 (5th Cir. 2005). A tort claim involving ERCOT's alleged mismanagement of the grid for the past ten years is not "the same claim or cause of action" as a contract-based claim that Entrust failed to pay invoices beginning in February 2021. Claims 107, 108.

Third, the same evidence will not be used to support both claims. The SFA and the outstanding invoices are necessary evidence for, and were attached to, ERCOT's proof of claim. *Id.* Meanwhile, these items are not relevant to the merits of the Trustee's gross negligence claim.

Finally, there is no logical relationship between ERCOT's proof of claim and the Trustee's gross negligence claim. *See McDaniel*, 987 F.2d at 304. ERCOT's proof of claim is premised on the contract between the parties and seeks amounts under the unpaid invoices for Entrust's purchases in the ERCOT market during the Storm. Claims 107, 108. But

the Trustee's gross negligence claim is based on ERCOT's alleged actions and decision-making long before the Storm, such as the failure to ensure generation facilities were winterized and knowledge concerning winter weather generally. ROA.437 ("*In 2011*, a severe storm had caused millions of Texans to lose power, and *in November 2020*, ERCOT was already predicting that weather patterns strongly suggested a severe weather event….") (emphasis added). There is no logical relationship between ERCOT's purported mismanagement of the grid and the contract between the parties under which Entrust owes ERCOT money for electricity it purchased.[11]

The Trustee's argument that her gross negligence claim arises out of the same transaction or occurrence as ERCOT's proof of claim because "ERCOT's gross negligence *caused* the" February 2021 invoices does not change this result. Appellee's Suppl. Br. 3. ERCOT's allegedly tortious actions over the decade preceding the Storm relating to grid management do not arise from the same transaction or occurrence as Entrust's contractual obligation to pay for electricity in the ERCOT market. *See*

---

[11] The Trustee seeks punitive damages as part of her gross negligence claim, ROA.308, which further demonstrates the lack of a logical relationship.

*generally* ROA.287-88. Thus, there is no "logical relationship" between the proof of claim and the gross negligence claim, as required to establish waiver under § 106(b). *Supreme Beef*, 391 F.3d at 634 (finding that underlying services "were performed over a different time period" and as such the claims "do not bear a logical relationship to one another").

> **2.    The Trustee waived any waiver argument under § 106(c), which fails in any event.**

In her supplemental brief, the Trustee argues—for the first time— that ERCOT waived its sovereign immunity under § 106(c) concerning "permissive counterclaims." Appellee's Suppl. Br. 3. This new argument should be disregarded because the Trustee has not previously raised waiver under § 106(c). *Rollins*, 8 F.4th at 397. Regardless, § 106(c) only applies to offsets. 11 U.S.C. § 106(c) ("Notwithstanding any assertion of sovereign immunity by a governmental unit, there shall be offset against a claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.").

The Trustee's gross negligence claim is not a compulsory counterclaim to ERCOT's proof of claim. Because this is the dispositive test for determining § 106 waiver, ERCOT's immunity remains intact.

*See Union Pac. R.R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 341 (5th Cir. 2011).

## V.  ERCOT does not owe Entrust a legal duty.

The Trustee has again failed to identify a specific legal duty owed to Entrust—an essential element of her gross negligence claim. Unless it owes a legal duty to Entrust, ERCOT cannot be held liable in tort. *See Ford v. Cimarron Ins. Co. Inc.*, 230 F.3d 828, 830 (5th Cir. 2000) ("Duty is the threshold inquiry of any negligence case."); *Kroger Co. v. Elwood*, 197 S.W.3d 793, 795 (Tex. 2006).

The Trustee's reliance on PURA (TEX. UTIL. CODE § 39.151(a)(2)) and the Administrative Code (16 TEX. ADMIN. CODE § 25.361(b))[12] for a private tort duty is misplaced. Appellee's Br. 55-56. These statutes provide ERCOT's function is to "ensure the reliability and adequacy of the regional electrical network," and the Trustee incorrectly claims they "clearly define a standard of conduct, and thus independently give rise to a duty in tort." Appellee's Br. 56.

---

[12] Absent *legislative* creation of a private cause of action in PURA, the PUCT has no authority to create a cause of action by rule. *Alexander v. Sandoval*, 532 U.S. 275, 291 (2001) ("[I]t is most certainly incorrect to say that language in a regulation can conjure up a private cause of action that has not been authorized by Congress. Agencies may play the sorcerer's apprentice but not the sorcerer himself.").

The statutes do not impose any common law duties and do not create any private cause of action for damages. *See Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 14 (1981); *Brown v. De La Cruz*, 156 S.W.3d 560, 563 (Tex. 2004). And a duty imposed by statute "is not equivalent to a duty in tort." *Perry v. S.N.*, 973 S.W.2d 301, 304-09 (Tex. 1998); *see also Entex, A Division of Noram Energy Corp. v. Gonzalez*, 94 S.W.3d 1, 9–10 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). The Trustee claims that even if PURA and the Administrative Code do not create any private causes of action, "that is besides the point." Appellee's Br. 56. But this is *exactly* the point. The Trustee relies on these statutes for a legal duty, but they contain none.

The Trustee claims that the common law imposes on ERCOT a "legal duty to ensure the reliability and adequacy of the Texas Interconnection." *Id.* at 56. But this is not a duty that has ever been recognized by common law and thus does not translate to a tort duty owed to Entrust. *See, e.g., Entex*, 94 S.W.3d at 9-10 (statute requiring gas utilities to furnish systems that are "safe, adequate, efficient, and reasonable" did not prohibit or require any conduct and could not provide adequate basis for imposing a negligence duty). The Trustee points to

§ 39.151(a)(2)—which governs ERCOT's role in the market—as the source of an actionable private tort duty. Appellee's Br. 56. But it is "*clearly is not the law*" that "every statute that specifie[s] a standard of care [is] enforceable by tort suits for damages"; otherwise, "every statute in effect would create an implied private right of action." *Cuyler v. United States*, 362 F.3d 949, 952 (7th Cir. 2004) (Posner, J.) (emphasis added).

Because there is no common law duty, the Trustee's reliance on *Praesel v. Johnson*, 967 S.W.2d 391 (Tex. 1998), falls flat. The Trustee cites to *Praesel* for the proposition that tort duties can be based on "standards of conduct," as defined in a regulatory statute. Appellee's Br. 56. This is only true in circumstances where "*a duty already exists* under the common law, and we look to statutes to establish the specific standard of care." *Praesel*, 967 S.W.2d at 394 (emphasis added). "In those instances in which we have determined that it would be appropriate to base civil liability on a statute, the standard of conduct has been clearly defined." *Id.* at 395. As noted above, the statutes relied upon by the Trustee do not establish a standard of care that can translate to a duty owed by ERCOT to Entrust.

Because the Trustee fails to allege a cognizable private tort duty owed by ERCOT to Entrust, the Trustee's gross negligence claim must be dismissed.

## VI. The bankruptcy court properly dismissed the Trustee's takings claim.

### A. The Trustee failed to plead the elements of her takings claim, and the claim was dismissed on that basis.

The elements of a Fifth Amendment takings claim are that the defendant (1) acting in a sovereign capacity, *Preston Hollow Cap., LLC v. Cottonwood Dev. Corp.*, 23 F.4th 550, 554 (5th Cir. 2022), (2) takes the plaintiff's private property for a public purpose, *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 956 F.3d 813, 815 (5th Cir. 2020), and (3) fails to provide the plaintiff just compensation for the taking, *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2170 (2019).

As a preliminary matter, the Trustee asserts her takings claim should not have been dismissed because she pleaded each essential element of the claim. Appellee's Br. 57. But the Trustee fails to show how each of these elements was satisfied by the allegations in the Complaint. *See id.* at 57-60. Indeed, she did not satisfy at least two of the elements, and the bankruptcy court properly dismissed the claim.

First, the Trustee failed to establish ERCOT was acting in a sovereign capacity when it effected the Mass Transition. Instead, the Trustee pleads ERCOT is a private corporation, *e.g.*, ROA.284 (emphasizing that ERCOT is a non-profit corporation), and argues at length it is not entitled to status as a sovereign, Appellee's Br. 42-51; Appellee's Suppl. Br. 8-9. The theory ERCOT was not acting as a sovereign when it charged the electricity rates at issue in this case and purportedly committed gross negligence is incompatible with the theory that when ERCOT effected the Mass Transition, as it was permitted to do under the *contract* between the parties, it did so in its capacity as a sovereign.

The Trustee emphasizes the bankruptcy court's comment that the takings claim "forces the Trustee to take positions that I think are inconsistent with respect to other claims," Appellee's Br. 58 (quoting ROA.644), and argues because she is permitted to plead inconsistent theories, it was "black-letter legal error" for the bankruptcy court to dismiss the takings claim on this basis. *Id.* But the Trustee ignores that the bankruptcy court found ERCOT *was not* acting in a sovereign capacity in effecting the Mass Transition. ROA.617. The bankruptcy

court thus dismissed the takings claim on the basis that not all elements were met. *See id.* It was not a dismissal based on the Trustee's inconsistent legal theories.

In her Supplemental Brief, the Trustee further claims an entity's *lack* of sovereign immunity does not preclude a takings claim. Appellee's Suppl. Br. 9 (citing *Bonin*, 65 F.4th at 253; *Stratta v. Roe*, 961 F.3d 340, 352, 358-61 (5th Cir. 2020); *Vogt v. Bd. of Comm'rs of Orleans Levee Dist.*, 294 F.3d 684, 696 (5th Cir. 2002)). This is irrelevant, as ERCOT *is* entitled to sovereign immunity, and the Trustee's takings claim fails for reasons other than the one recognized by the bankruptcy court.

Second, the property purportedly taken was not taken for public use. The Trustee emphasizes utility regulation is traditionally a public function, argues the Mass Transition occurred in the name of utility regulation, and cites case law that is irrelevant to the takings clause. Appellee's Br. 59-60 (citing *U.S. Fid. & Guar. Co. v. Quinn Bros. of Jackson, Inc.*, 384 F.2d 241, 245 (5th Cir. 1967); *Bowman v. Birmingham Transit Co.*, 280 F.2d 531, 535 (5th Cir. 1960)). A takings claim requires that *the property at issue* be taken to be put to *public use. Kelo v. City of New London*, 545 U.S. 469, 472 (2005). The Trustee pleads the exact

opposite: ERCOT transferred Entrust's customers to another retail energy provider. ROA.296, 306.

Because the Trustee failed to meet each element of her takings claim, it was properly dismissed.

## B. Additional reasons support dismissal of the takings claim.

This Court may affirm the bankruptcy court's dismissal of the Trustee's takings claim for any reason supported by the record, even if not relied upon by the bankruptcy court. *Clarkston v. White*, 943 F.3d 988, 992 (5th Cir. 2019). The record supports the dismissal of the takings claim on other grounds, too.

As ERCOT pointed out in its opening brief, *Devillier v. Texas* forecloses federal takings claims against a state. 53 F.4th 904, 904 (5th Cir. 2023) (citing *Hernandez v. Mesa*, 140 U.S. 735, 742 (2020)). The Trustee fails to address this decisive principle, let alone explain why her takings claim should proceed in spite of this Court's precedent.

Additionally, as ERCOT explained in the court below, ROA.374-75, and the Trustee has not addressed in her briefing before this Court, Texas law shields ERCOT from liability to retail electricity providers for transitioning customers to a POLR—the basis of the Trustee's takings

claim. ROA.375. The Trustee cannot bring any claim, under "any theory of legal liability," asserting an injury from this conduct. 16 TEX. ADMIN. CODE § 25.43(o)(2).

The bankruptcy court did not err in dismissing the Trustee's takings claim. And the Trustee cannot overcome all the reasons that dismissal was appropriate.

## CONCLUSION

ERCOT respectfully requests that this Court REVERSE the order of the bankruptcy court and instruct the bankruptcy court to abstain under *Burford* or RENDER judgment that the Complaint be dismissed. Additionally, ERCOT respectfully requests this Court AFFIRM the bankruptcy court's dismissal of the Trustee's takings claim.

Dated: August 1, 2023     Respectfully submitted,

**MUNSCH HARDT KOPF & HARR, P.C.**

By: */s/ Kevin M. Lippman*
Jamil N. Alibhai (SBT 00793248)
Kevin M. Lippman (SBT 00784479)
3800 Ross Tower
500 N. Akard Street
Dallas, TX 75201
Telephone: (214) 855-7500
jalibhai@munsch.com
klippman@munsch.com

-and-

**ALEXANDER DUBOSE &
JEFFERSON LLP**

Wallace B. Jefferson (SBT 00000019)
Nicholas Bacarisse (SBT 24073872)
515 Congress Avenue, Suite 2350
Austin, TX 78701
Telephone: (512) 482-9300
wjefferson@adjtlaw.com
nbacarisse@adjtlaw.com

**COUNSEL FOR ELECTRIC
RELIABILITY COUNCIL OF TEXAS,
INC.**

**CERTIFICATE OF SERVICE**

On August 1, 2023, a true and correct copy of the foregoing was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the Fifth Circuit, which currently provides electronic service on the counsel of record.

*/s/ Kevin M. Lippman*
Kevin M. Lippman

## CERTIFICATE OF COMPLIANCE

I certify that:

1.   This brief complies with the type-volume requirements of FED. R. APP. P. 32(a)(7) because it contains 12,080 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(f).

2.   This brief complies with the typeface and type-style requirements of FED. R. APP. P. 32(a)(5) and (a)(6) because it was prepared in Microsoft Office Word in 14-point font, Century Schoolbook type style, except footnotes, which are in 12-point font, Century Schoolbook type style.

By: */s/ Kevin M. Lippman*
Kevin M. Lippman