No. 22-20603

*In the*

# United States Court of Appeals

*for the*

## Fifth Circuit

---

IN RE ENTRUST ENERGY, INC., *ET AL.*,

*Post-Confirmation Debtors*,

ANNA PHILLIPS, AS LIQUIDATING TRUSTEE OF THE
ENTRUST LIQUIDATING TRUST,

*Appellee/Cross-Appellant*,

– v –

ELECTRIC RELIABILITY COUNCIL OF TEXAS, INC.,

*Appellant/Cross-Appellee.*

---

On Appeal from the U.S. Bankruptcy Court for the
Southern District of Texas
Adv. No. 22-3018 (DRJ)

---

**REPLY BRIEF OF APPELLEE/CROSS-APPELLANT**

---

<table>
<tr>
<td>

Charles R. Gibbs
Debbie E. Green
McDermott Will & Emery LLP
2501 North Harwood Street
Dallas, Texas 75201
(214) 295-8000

</td>
<td>

Darren Azman
McDermott Will & Emery LLP
One Vanderbilt Avenue
New York, New York 10017
(212) 547-5400

</td>
</tr>
</table>

*Counsel for Appellee/Cross-Appellant*

# TABLE OF CONTENTS

**Page**

ARGUMENT ..................................................................................................1

    I.    The Trustee Adequately stated a Takings Claim. .................................1

        A.    The mass transition deprived the debtors of a private property interest without compensation......................................1

        B.    ERCOT acted in a sovereign capacity when it directed the mass transition.......................................................................3

        C.    An uncompensated taking is unconstitutional irrespective of whether it had a public or private purpose, and the mass transition had a public purpose in any event. ...................9

    II.    ERCOT's remaining arguments are meritless....................................12

CONCLUSION ...........................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azul-Pacifico, Inc. v. City of L.A.*,
  973 F.2d 704 (9th Cir. 1992) ...................................................................13

*Berman v. Parker*,
  348 U.S. 26 (1954).....................................................................................11

*Bishop v. City of Galveston*,
  595 F. App'x 372 (5th Cir. 2014) ............................................................2

*Bonin v. Sabine River Auth.*,
  65 F.4th 249 (5th Cir. 2023) ....................................................................6

*Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*,
  531 U.S. 288 (2001)............................................................................3, 5, 6

*Brown v. Taylor*,
  677 F. App'x 924 (5th Cir. 2017) ..........................................................14

*Buchanan v. Little Rock Sch. Dist. of Pulaski Cnty., Ark.*,
  84 F.3d 1035 (8th Cir. 1996) ...................................................................2

*CPS Energy v. Elec. Reliability Council of Texas*,
  671 S.W.3d 605, 616-617 (Tex. 2023); *accord Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375 (1983)................4, 5, 6

*Cranley v. Nat'l Life Ins. Co. of Vermont*,
  318 F.3d 105 (2d Cir. 2003) ....................................................................6

*Degan v. Bd. of Trustees of Dallas Police & Fire Pension Sys.*,
  956 F.3d 813 (5th Cir. 2020), and (3)............................................1, 2

*Devillier v. Texas*,
  53 F.4th 904 (5th Cir. 2023) (per curiam) .................................12, 13

*Est. of Henson v. Wichita Cnty.*,
  795 F.3d 456 (5th Cir. 2015) ..................................................................5

ii

*Flagg Bros. v. Brooks*,
436 U.S. 149 (1978)..................................................................8

*Hawaii Hous. Auth. v. Midkiff*,
467 U.S. 229 (1984)......................................................10, 11, 12

*Jacintoport Corp. v. Greater Baton Rouge Port Com'n*,
762 F.2d 435 (5th Cir. 1985) ....................................................6

*Kelo v. City of New London*,
545 U.S. 469 (2005)............................................................10, 11

*Knick v. Twp. of Scott, Pennsylvania*,
139 S. Ct. 2162 (2019)........................................................1, 2, 13

*Martinez v. State of Cal.*,
444 U.S. 277 (1980)................................................................14

*Morris v. Dillard Dep't Stores, Inc.*,
277 F.3d 743 (5th Cir. 2001) .................................................3, 8

*N. Texas Producers Ass'n v. Young*,
308 F.2d 235 (5th Cir. 1962) ....................................................2

*Phillips v. Washington Legal Found.*,
524 U.S. 156 (1998)..................................................................1

*Preston Hollow Cap., L.L.C. v. Cottonwood Dev. Corp.*,
23 F.4th 550 (5th Cir. 2022) ..........................................1, 3, 5, 6

*Pub. Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*,
351 S.W.3d 588 (Tex. App. 2011)............................................8

*Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*,
219 S.W.3d 563 (Tex. App.—Austin 2007, pet. denied) ....................2

*U.S. Fid. & Guar. Co. v. Quinn Bros. of Jackson*,
384 F.2d 241 (5th Cir. 1967) ....................................................4

*Warren v. City of Athens*,
411 F.3d 697 (6th Cir. 2005) ..................................................10

*Weinstein v. Univ. of Illinois*,
  811 F.2d 1091 (7th Cir. 1987) ...............................................................................2

**Statutes**

42 U.S.C. § 1983 ...............................................................................................13, 14

Tex. Util. Code § 39.101(a)(1) ..................................................................................4

Tex. Util. Code § 39.101(b)(4) ..............................................................................4, 8

Tex. Util. Code § 39.106(g) ...........................................................................4, 8, 9, 12

**Other Authorities**

16 Tex. Admin. Code § 25.21(b) ..............................................................................11

16 Tex. Admin. Code § 25.43(o)(2) ..........................................................................13

16 Tex. Admin. Code § 25.43(p)(10)(A) ..................................................................5, 8

# ARGUMENT

## I.    THE TRUSTEE ADEQUATELY STATED A TAKINGS CLAIM.

As explained in the Trustee's opening brief, ERCOT's mass transition of Entrust's customer contracts effected an unconstitutional taking. *See* Trustee Br. 57-60. "The Fifth Amendment, made applicable to the States through the Fourteenth Amendment, provides that 'private property' shall not 'be taken for public use, without just compensation.'" *Phillips v. Washington Legal Found.*, 524 U.S. 156, 163-64 (1998) (citation omitted). Thus, a plaintiff states a takings claim by alleging that the defendant (1) "acting in [a] sovereign capacity," *see Preston Hollow Cap., L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 554 (5th Cir. 2022), (2) took a private property interest, *see Degan v. Bd. of Trustees of Dallas Police & Fire Pension Sys.*, 956 F.3d 813, 815 (5th Cir. 2020), and (3) failed to provide "full compensation," *see Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170 (2019). The Amended Complaint sufficiently pleaded these elements.

### A.    The mass transition deprived the debtors of a private property interest without compensation.

ERCOT does not dispute that the Amended Complaint satisfied the private-property and compensation elements of a takings claim, nor could it. The Amended Complaint stated that the debtors owned "contracts with approximately 13,000 customers" and were actively seeking purchasers for those contracts when the mass transition occurred. ROA.298. The contracts undoubtedly had value because the

1

debtors closed a multi-million-dollar sale of contracts in early March 2021, and a buyer sent a letter of intent to purchase a "significant portion" of the remaining ones. ROA.298. That transaction fell through because ERCOT transitioned all the remaining customers through the POLR program. ROA.298.

"[T]he existence of a property interest is determined by reference to existing rules or understandings that stem from an independent source such as state law." *Degan*, 956 F.3d at 815. Courts in Texas and throughout the country recognize that "a contract is a property right." *Texas Disposal Sys. Landfill, Inc. v. Waste Mgmt. Holdings, Inc.*, 219 S.W.3d 563, 588 (Tex. App.—Austin 2007, pet. denied); *see N. Texas Producers Ass'n v. Young*, 308 F.2d 235, 243 (5th Cir. 1962) (citing cases "from courts of all levels, [that] conclusively hold that valid contracts are 'property.'"); *Bishop v. City of Galveston*, 595 F. App'x 372, 376 (5th Cir. 2014); *Buchanan v. Little Rock Sch. Dist. of Pulaski Cnty., Ark.*, 84 F.3d 1035, 1038 (8th Cir. 1996); *Weinstein v. Univ. of Illinois*, 811 F.2d 1091, 1096 (7th Cir. 1987). It is incontrovertible that "[t]he Debtors had a vested property interest in their contracts" and that ERCOT "took" "customer contracts . . . from the Debtors through the Mass Transition." ROA.298, 306. Further, the Amended Complaint pleaded that "ERCOT did not pay the Debtors any compensation" for the mass transition. ROA.306. The Trustee therefore sufficiently alleged that ERCOT "t[ook the debtors'] property without paying for it." *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2167 (2019).

**B.      ERCOT acted in a sovereign capacity when it directed the mass transition.**

The Trustee's opening brief (at 58-60) explained that ERCOT was acting in a sovereign capacity when it directed the mass transition. Courts treat a "nominally private entity as a state actor . . . when it has been delegated a public function by the State." *Brentwood Acad. v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 296 (2001). In the takings context, a plaintiff can plausibly allege that a defendant "was acting in a sovereign capacity" by alleging that it "acted pursuant to a statute, ordinance, or regulation," *Preston Hollow Cap., L.L.C. v. Cottonwood Dev. Corp.*, 23 F.4th 550, 554 (5th Cir. 2022) (quoting *Masso-Torrellas v. Municipality of Toa Alta*, 845 F.3d 461, 469 (1st Cir. 2017)), and that the procedure was "mandatory," *Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 750-51 (5th Cir. 2001).

The Amended Complaint alleged these facts by describing ERCOT's delegated authority with respect to the POLR program (*see* ROA.284-285, 295-298) and stating that "ERCOT was acting in a sovereign capacity," "under color of state law," "pursuant to PURA" and "pursuant to regulations" "when it effected the Mass Transition." ROA.306.

The law and regulatory scheme bear these allegations out. As the Trustee explained in her supplemental brief (at 8-9), the Texas Supreme Court has confirmed that "ERCOT exercises delegated authority from the PUC" and "performs a 'uniquely governmental' function," that is, "the governmental function of utilities

regulation." *CPS Energy v. Elec. Reliability Council of Texas*, 671 S.W.3d 605, 616-617, 623 (Tex. 2023); *accord Arkansas Elec. Co-op. Corp. v. Arkansas Pub. Serv. Comm'n*, 461 U.S. 375, 377 (1983) ("The regulation of utilities is one of the most important of the functions traditionally associated with the police power of the States."); *see also* ROA.284 ("The PUCT has delegated its rulemaking authority in part to ERCOT.").

The POLR program, through which ERCOT effected the mass transition, is part of that public function specifically designed to prevent an interruption of service for consumers. *See U.S. Fid. & Guar. Co. v. Quinn Bros. of Jackson*, 384 F.2d 241, 245 (5th Cir. 1967) ("[T]he protection for the consuming public . . . inheres in the nature of a public utility"). The program "entitle[s]" electricity customers "to be served by a provider of last resort" as a "protection against service disconnections in an extreme weather emergency." TEX. UTIL. CODE § 39.101(b)(4), (a)(1). Texas law mandates that, if "a retail electric provider fails to serve any or all of its customers, the provider of last resort shall offer" a standard service package "with no interruption of service to any customer." *Id* § 39.106(g). PUCT implements these requirements through its "Customer Service and Protection" regulations, which provide that "ERCOT must initiate a mass transition to POLR providers" when one of several events occurs, including when a Load Serving Entity (LSE) agreement is terminated.

16 TEX. ADMIN. CODE § 25.43(p)(10)(A); *accord* Protocols § 16.11.6.1.6(3)(b) (upon termination of an LSE agreement, "ERCOT shall initiate a Mass Transition").

Thus, when ERCOT ordered the mass transition, it exercised the customer-protective component of the delegated public function of utilities regulation and "acted pursuant to a statute, ordinance, or regulation." *Preston Hollow*, 23 F.4th at 554; *see Brentwood Acad.*, 531 U.S. at 296; *CPS Energy*, 671 S.W.3d at 616-617, 623. The Trustee satisfied the sovereign-capacity element of its takings claim.

ERCOT counters that the sovereign-capacity element was not satisfied because the Amended Complaint elsewhere "pleads ERCOT is a private corporation" that does not enjoy sovereign immunity, and in ERCOT's view, that theory as "incompatible" with the takings claim. ERCOT Resp. Br. at 57; *accord* ROA.644 (finding that the takings claim was "inconsistent with respect to other claims"). First, that is beside the point, because "there is no rule barring a plaintiff from pleading both alternative theories, and a court may properly evaluate each separately." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 464 (5th Cir. 2015).

In any event, the Trustee's opening and supplemental briefs showed that its theories "are *not* legally inconsistent" (Trustee Br. 58; Supp. Br. 8-9). A private entity can simultaneously exercise a delegated government function (and thus become liable for a taking or other constitutional violation) while lacking sovereign immunity.

The question of whether ERCOT possesses sovereign immunity predominantly turns on "whether the funds to defray any award would be derived from the state treasury"—and here, they would not. *Jacintoport Corp. v. Greater Baton Rouge Port Com'n*, 762 F.2d 435, 441 (5th Cir. 1985); *see CPS Energy*, 671 S.W.3d at 627 (explaining that "ERCOT is not funded with tax dollars" but is "primarily funded by a system administration fee charged to wholesale buyers and sellers of electricity"). That and the other *Clark* factors—such as "whether state statutes and case law characterize the agency as an arm of the state" and "whether the entity has authority to sue and be sued in its own name"—are primarily based on *status*. *Bonin v. Sabine River Auth.*, 65 F.4th 249, 254 (5th Cir. 2023).

By contrast, the state-action inquiry for purposes of a takings claim has a different doctrinal framework centered on *activity*. *See Brentwood Acad.*, 531 U.S. at 295 (noting that "state action may be found" if the private entity's "behavior" is fairly attributable to the state, as when it "operates" in joint activity with the state or "has been delegated a public function"); *Cranley v. Nat'l Life Ins. Co. of Vermont*, 318 F.3d 105, 111 (2d Cir. 2003) (applying *Brentwood Academy*'s "fairly attributable" analysis to a takings claim). The "sovereign capacity" inquiry discussed in *Preston Hollow* underscores the point: even when the defendant is the government, what matters for purposes of a takings claim is that it was "*acting* in its sovereign capacity" rather than a commercial one. 23 F.4th at 554 (emphasis added). These distinct

frameworks appropriately correspond to their respective aims; one seeks to establish the *status* of an "immunity" while the other defines the *activity* of state "action."[1]

ERCOT incorrectly contends that the bankruptcy court "found ERCOT *was not* acting in a sovereign capacity in effecting the Mass Transition." ERCOT Br. 57 (quoting ROA.617). The bankruptcy court made no such finding. It merely asked the Trustee's counsel whether it "create[s] a problem" for the takings claim if "ER-COT's not the State of Texas," and then asked if the claim depended on a finding that "ERCOT is the Government." ROA.617-618. Counsel explained that ERCOT was in fact a "private party[]" that has been "deputized as a state actor" to "go and take" property, correctly highlighting the distinction between the sovereign-immunity and state-action frameworks. To the extent the bankruptcy court did make a finding during that exchange (*see* ROA.644 (relying on unspecified "findings that I have made")), it could only have been a finding that "ERCOT's not the State of Texas." ROA.617. But as the Trustee has explained, such a finding is immaterial to the

---

[1] ERCOT's characterization of the Trustee's theories conflates the two doctrinal frameworks. The Trustee does not claim that ERCOT lacks sovereign immunity because it was "not acting as a sovereign" when it committed gross negligence (ERCOT Resp. Br. 57). Rather, ERCOT lacked sovereign *status* under the *Clark* factors. *See* Trustee Br. 41-54. The state-action requirement of the takings claim, on the other hand, was satisfied because ERCOT did "act" as the government when it facilitated the mass transition. *Id.* at 58-60; Supp. Br. 8-10.

takings inquiry, because private parties can be liable for constitutional violations when they engage in state action. *See infra*; Trustee Br. 58-60.

ERCOT's suggestion that it was "permitted to" effect the mass transition "under the *contract* between the parties" is inaccurate because the mass transition was mandatory. *See* ERCOT Br. 57. The Supreme Court has said that "a State is responsible for the . . . act of a private party when the State, by its law, has compelled the act." *Flagg Bros. v. Brooks*, 436 U.S. 149, 164 (1978); *see Morris*, 277 F.3d at 750-51 ("[A] private party's invocation of state legal procedures does not constitute state action where the procedure is permissive and not mandatory."). Here, ERCOT was obligated to conduct the mass transition under state law and regulation. At the statutory level, the obligation flows from the right of customers to "to be served by a provider of last resort," TEX. UTIL. CODE § 39.101(b)(4), "with no interruption of service," *id* § 39.106(g). Regulations implement that entitlement by providing that "ERCOT *must* initiate a mass transition to POLR providers" in certain circumstances. 6 TEX. ADMIN. CODE § 25.43(p)(10)(A) (emphasis added). ERCOT's Protocols, which must be approved by the PUCT and which "have the force and effect of statutes," *Pub. Util. Comm'n v. Constellation Energy Commodities Grp., Inc.*, 351 S.W.3d 588, 595 (Tex. App. 2011), also recognize this obligation. *See* Protocols § 16.11.6.1.6(3)(b) ("ERCOT shall initiate a Mass Transition" after termination of

LSE agreement). These authorities set forth a mandatory, not a permissive procedure.[2]

Therefore, the Amended Complaint sufficiently alleged that ERCOT acted as a state actor when it performed the mass transition. ROA.306.

**C.  An uncompensated taking is unconstitutional irrespective of whether it had a public or private purpose, and the mass transition had a public purpose in any event.**

Remarkably, ERCOT defends its uncompensated taking by contending that "the property . . . was not taken for public use" because it was given to "another retail energy provider." ERCOT Br. 58-59. That is misguided on two counts. First, taking private property for a private purpose is inherently unconstitutional. Second, the mass transition served the public purpose of ensuring uninterrupted service for the electricity-consuming public.

ERCOT asserts that "[a] takings claim requires that the property at issue be taken to be put to *public use*." ERCOT Br. 58-59 (emphasis omitted). That is simply

---

[2]  The Protocols' incorporation of the Standard Form Market Participant Agreement does not transform the Trustee's claim into a contractual one. Not only is the mass transition obligatory as a matter of regulation, but it can and did occur after the agreement was terminated. ROA.297; Protocol § 16.11.6.1.6(3)(b). The provision compels the mass transition if the Market Participant is an LSE—meaning it sells energy to consumers—"whether or not the Default occurred pursuant to the Market Participant's activities as an LSE." *Id.* § 16.11.6.1.6(3). The mass transition is thus not a remedy for default. It is a legal requirement to prevent an "interruption of service" to consumers. *See* Tex. Util. Code § 39.106(g).

not a correct statement of the law. To the contrary, takings for private use are *per se* unconstitutional, even if just compensation is paid: "[T]he sovereign may not take the property of *A* for the sole purpose of transferring it to another private party *B*, even though *A* is paid just compensation." *Kelo v. City of New London*, 545 U.S. 469, 477 (2005); *see also id.* (defendant would "no doubt be forbidden from taking petitioners' land for the purposes of conferring a private benefit on a particular private party"); *Hawaii Hous. Auth. v. Midkiff*, 467 U.S. 229, 245 (1984) ("[T]he Constitution forbids even a compensated taking of property when executed for no reason other than to confer a private benefit on a particular private party," and "[a] purely private taking . . . would serve no legitimate purpose of government and would thus be void.").

In other words, "public use" is not a required element of a takings claim; it is one half of a potential *defense* to a takings claim—*i.e.*, that property was taken for public use *and* just compensation was paid. *See, e.g.*, *Warren v. City of Athens*, 411 F.3d 697, 705 (6th Cir. 2005) ("Private use takings do not involve claims for compensation, as they are unconstitutional regardless of whether just compensation is paid.") (internal quotation marks omitted). Because it is undisputed that Entrust was provided *no* compensation for the taking of its property, it is irrelevant whether that property was taken for public or private use. The taking was unconstitutional either

way, and ERCOT, therefore, presents no basis for affirming the dismissal of the takings claim.

In any case, the Amended Complaint plausibly alleged that the mass transition was intended for a public purpose. *See Kelo*, 545 U.S. at 480 (construing public use to mean "public purpose"); *see also Midkiff*, 467 U.S. at 241 (taking is for a public use if it is "rationally related to a conceivable public purpose"). ERCOT's argument that the debtors' property was transferred "to another retail energy provider" mimics the claim in *Berman v. Parker* that property was taken "from one businessman for the benefit of another businessman." 348 U.S. 26, 33 (1954). But there, the Court concluded that the taking was for a public use, where the overall project advanced the "public welfare." *Id.*; *see also Midkiff*, 467 U.S. at 241-243 (governmental transfer of land "in the first instance to private beneficiaries" was for a public purpose because the legislature sought "to reduce the perceived social and economic evils of a land oligopoly"); *Kelo*, 545 U.S. at 484 (property taken as part of a redevelopment plan simply to "promote economic development" deemed to have a public purpose).

Here, although the contracts were transferred to private entities, the mass transition and POLR program putatively served a public purpose. The PUCT's "Customer Service and Protection" rules carry the express "purpose . . . to establish minimum customer service standards that electric utilities must follow in providing electric service to the public." 16 TEX. ADMIN. CODE § 25.21(b). The regulations

themselves implement the Public Utility Regulatory Act (PURA), which aims to protect the electricity-consuming public by establishing POLRs to prevent any "interruption of service to any customer." TEX. UTIL. CODE § 39.106(g). Though not required, the Amended Complaint alleged these facts. *See* ROA.296 (describing the "customer service and protection rules"); ROA.296-297 (citing PURA and PUCT regulations to show "the public importance of the POLR program"); *see also* ROA.296 (mandates of the POLR program are an exercise of the Texas Legislature's "police power"); *Midkiff*, 467 U.S. at 240 ("the 'public use' requirement is thus coterminous with the scope of a sovereign's police powers.").

In sum, ERCOT's concession that it effected the taking for a private purpose can only strengthen the Trustee's claim. Whether viewed as having a private or public purpose, however, the uncompensated mass transition was unlawful.

## II.   ERCOT'S REMAINING ARGUMENTS ARE MERITLESS.

ERCOT makes two additional arguments, each in a single paragraph. *See* ERCOT Br. 59-60. Both arguments fail.

First, ERCOT argues that *Devillier v. Texas*, 53 F.4th 904, 904 (5th Cir. 2023) (per curiam) "forecloses federal takings claims against a state." ERCOT Br. 59. But that is not what *Devillier* actually held. Instead, the Court's holding was more nuanced: that the Takings Clause "does not *provide a right of action* for takings claims against a state." *Id.* at 904 (emphasis added).

*Devillier* is therefore irrelevant here, where the Trustee brought the takings claim under the right of action provided under 42 U.S.C. § 1983, not under any purported implied constitutional cause of action. ROA.306. The Supreme Court has upheld such claims. *Knick v. Twp. of Scott*, 139 S. Ct. 2162, 2177 (2019) (holding that "a government violates the Takings Clause when it takes property without compensation, and that a property owner may bring a Fifth Amendment claim under § 1983 at that time"). *Devillier* itself supports the propriety of this approach too; indeed, the case it cites for the proposition that "a takings plaintiff has 'no cause of action directly under the United States Constitution'" (*Devillier*, 53 F.4th at 904 n.1 (quoting *Azul-Pacifico, Inc. v. City of L.A.*, 973 F.2d 704, 705 (9th Cir. 1992)), says in the very next sentence that "a litigant complaining of a violation of a constitutional right must utilize 42 U.S.C. § 1983" (*Azul-Pacifico*, 973 F.2d at 705). Because that is exactly what the Trustee has done, *Devillier* is no impediment here.

Second, ERCOT claims that "Texas law shields ERCOT from liability" for mass transitions. ERCOT Br. 59. It invokes a PUCT regulation stating that "[i]n no event will ERCOT or a POLR provider be liable for damages to any REP, whether under tort, contract or any other theory of legal liability, for transitioning or attempting to transition a customer from such REP to the POLR provider to carry out this section." 16 TEX. ADMIN. CODE § 25.43(o)(2).

This argument fails because the Supremacy Clause precludes a state regulation from superseding federal causes of action. "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law." *Martinez v. State of Cal.*, 444 U.S. 277, 284 n.8 (1980). Holding otherwise "would transmute a basic guarantee into an illusory promise" and is inconsistent with the Supremacy Clause. *Id.*; *see also, e.g.*, *Brown v. Taylor*, 677 F. App'x 924, 930 n.4 (5th Cir. 2017) ("[S]tate law cannot provide immunity from a section 1983 claim.") (citing *Martinez*, 444 U.S. at 284 n.8). ERCOT is thus liable for a constitutional taking.

## CONCLUSION

For the foregoing reasons, the bankruptcy court's dismissal of Count V of the Amended Complaint should be reversed.

Dated:    September 12, 2023                Respectfully submitted,

*/s/ Debbie E. Green*
Charles R. Gibbs
Debbie E. Green
MCDERMOTT WILL & EMERY LLP
2501 North Harwood Street
Suite 1900
Dallas, Texas 75201-1664
Telephone: (214) 295-8000
Facsimile: (972) 232-3098
crgibbs@mwe.com
dgreen@mwe.com

—and—

Darren Azman
MCDERMOTT WILL & EMERY LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: (212) 547-5400
Facsimile: (212) 547-5444
dazman@mwe.com

*Counsel for Appellee-Cross-Appellant*
*Anna Phillips, as Liquidating Trustee of*
*the Entrust Liquidating Trust*

## CERTIFICATE OF SERVICE

I hereby certify that on September 12, 2023, I served a copy of the foregoing motion on parties through counsel of record as indicated below:

Jamil N. Alibhai
Kevin M. Lippman
MUNSCH HARDT KOPF & HARR, P.C.
3800 Ross Tower
500 N. Akard Street
Dallas, Texas 75201-6659
Telephone: (214) 855-7500
Facsimile: (214) 855-7584
jalibhai@munsch.com
klippman@munsch.com

*Via Operation of the Court's E-filing System*

Wallace B. Jefferson
Nicholas Bacarisse
wjefferson@adjtlaw.com
nbacarisse@adjtlaw.com
ALEXANDER DUBOSE & JEFFERSON LLP
515 Congress Avenue, Suite 2350
Austin, Texas 78701
Telephone: (512) 482-9300
Facsimile: (512) 482-9303

*Via First Class U.S. Mail and E-mail*

George H. Fibbe
Aaron M. Streett
J. Mark Little
BAKER BOTTS L.L.P.
910 Louisiana Street Houston, Texas 77002
Telephone: (713) 229-1234
Facsimile: (713) 229-1522
george.fibbe@bakerbotts.com
aaron.streett@bakerbotts.com
mark.little@bakerbotts.com

*Via Operation of the Court's E-filing System*


Dated: September 12, 2023    */s/ Debbie E. Green*
           Debbie E. Green

# CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(B), the undersigned counsel for Plaintiff-Appellants certifies that this brief:

(i)　　contains 3,345 words, including footnotes and excluding the parts of the brief exempted by Rule 32(f); and

(ii)　　complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) because it has been prepared using Microsoft Office Word 365 and is set in size 14 Times New Roman font.


Dated: September 12, 2023　　　　*/s/ Debbie E. Green*　　　　　　　　　
　　　　　　　　　　　　　　　　Debbie E. Green